**John P. CHAFFIN, Plaintiff,**

v.

**George Joseph DUNN, Defendant.**

**Bankruptcy No. 84 C 10090.**

United States District Court,
N.D. Illinois, E.D.

Dec. 4, 1985.

737

William J. Stevens, Chicago, Ill., for plaintiff.

Vincent Paulauskis, Bourbonnais, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

Plaintiff in this action appeals from an order of the Bankruptcy Court, Fisher, J., denying the plaintiff's complaint asserting the nondischargeability, pursuant to 11 U.S.C. § 523, of a debt owed to the plaintiff by the defendant. Jurisdiction of this Court to review the order of the Bankruptcy Court is provided by 28 U.S.C. § 158(a).

*Facts* [1]

On June 25, 1979, the plaintiff in this action, John Chaffin ("Chaffin") entered

---

**1.** The facts as described in this opinion are consistent with the facts as found by the Bankruptcy Court in its memorandum opinion of October 9, 1984. *Chaffin v. Dunn,* No. 82 B 3452, 82 A 10783 (Bankr.N.D.Ill. Oct. 9, 1984). Where necessary for clarity, this Court has added details gleaned from its examination of the record.

738

into a limited partnership agreement with Roger Wahlin ("Wahlin"). According to the limited partnership agreement, the purpose of the limited partnership was to acquire and develop real estate in Crystal Lake, Illinois, to be known as Hampton Court ("Hampton Court project"). Wahlin was identified as the general partner and Chaffin as the limited partner. As limited partner, Chaffin contributed $125,000 in capital and was, under the agreement, entitled to a fifty percent interest in the Hampton Court project.

Sometime in late 1979 or early 1980, Wahlin told Chaffin that he was interested in selling his interest in the Hampton Court project. While negotiating with the defendant in this action, George Dunn ("Dunn"), as a prospective purchaser of that interest, Wahlin told Dunn that Chaffin had agreed to the proposed transfer.

On September 25, 1979, Dunn entered into a contract with Wahlin for purchase of the Hampton Court property. The purchase price was $110,000 cash and assumption of the outstanding development expenses of the Hampton Court project. An amendment to the purchase agreement stated that the agreement was subject to several conditions, including:

> Partnership agreement between John Chaffin and Roger A. Wahlin entitled J & R Associates. See copy attached and made a part thereof. Purchaser specifically agrees to be bound by all terms and conditions of each agreement. Purchaser may, within 60 days from date thereof, cancel said partnership agreement by the payment to the limited partnership, John Chaffin, of the sum of $160,000.00. In the event said partnership agreement is not cancelled by purchaser, seller shall have a continuing interest to oversee and direct the event of said development as it relates to said partnership agreement.

Chaffin learned of the sale in April, 1980, when Wahlin informed him that Dunn had purchased Wahlin's interest in the Hampton Court project but that Chaffin's interest was protected.

Chaffin met Dunn for the first time on May 9, 1980, at O'Hare Airport in Chicago. Dunn told Chaffin the property involved in the project was in a land trust with Dunn named as sole beneficiary. Both Chaffin and Dunn testified that Dunn acknowledged at the O'Hare meeting that Chaffin still held a fifty percent interest in the Hampton Court project. On May 23, 1980, Dunn sent Chaffin a letter again confirming Chaffin's interest.

On June 20, 1980, Chaffin's counsel in California sent a letter to Dunn's counsel in Illinois regarding Chaffin's interest in the Hampton Court project. The letter outlines a proposed transfer of Chaffin's interest to Dunn and claims Dunn had already agreed to the terms indicated. In brief, the proposed transaction envisioned transfer of Chaffin's interest in the project to Dunn in exchange for a promissory note from Dunn to Chaffin for $160,000.00 and, as security for the note, a deed of trust on the property that would be junior only to a pre-existing deed of trust securing a $1,400,000.00 construction loan. Included with the letter was a draft of the promissory note, upon which was stated: "This note is secured by a Deed of Trust."

Dunn executed the promissory note in the form in which it was forwarded from California. He returned the executed note to Chaffin with a letter that reads as follows:

> John:
> Enclosed is the signed note as is. As I mentioned, I do need a little leeway until I get the construction loan balanced. I hope the signed note will give you some peace of mind. I am actively persuing (sic) other investors and may have a report for you in a week or so. Thanks again.
> George

The deed of trust envisioned by the proposed Chaffin/Dunn transaction and noted in the promissory note was never executed.

On July 11, 1980, Dunn took out a second mortgage on the Hampton Court project in the amount of $193,174.73. The mortgage was recorded 5 days later. Dunn testified,

and the Bankruptcy Court found, that the second mortgage represented a consolidation of earlier construction loans for the Hampton Court project and that Dunn received no money as a result of the second mortgage.

Chaffin, concerned that he had not received a deed of trust to secure the promissory note, instituted an action in the United States District Court for the Northern District of Illinois to protect his interest in the Hampton Court project. *Chaffin v. Wauconda National Bank, et al.,* No. 80 C 3834. Pursuant to that action, a default judgment was entered in favor of Chaffin and against Dunn for $125,000.00, the amount that Chaffin originally paid Wahlin for Chaffin's fifty percent interest in the limited partnership and the Hampton Court project. The amount represented by this default judgment is the subject of Chaffin's nondischargeability complaint in Dunn's bankruptcy proceedings.

After a trial on the dischargeability complaint, the Bankruptcy Court held, *inter alia,* that Chaffin had failed to prove a transfer of property or money from Chaffin to Dunn, and therefore had failed to establish that the debt should be found to be nondischargeable under 11 U.S.C. § 523(a)(2)(A). *Chaffin v. Dunn,* No. 82 A 3452, 82 B 10783, slip op. (Bankr.N.D.Ill. Oct. 9, 1984). On appeal, plaintiff Chaffin claims the Bankruptcy Court erred in finding that 11 U.S.C. § 523(a)(2)(A) does not prevent the discharge of the $125,000.00 default judgment.[2]

*Discussion*

When a district court reviews a decision of the bankruptcy court, the district court must accept the bankruptcy court's findings of fact unless they are "clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed.R.Bankr.P. 8013. *See also, In re Kimzey,* 761 F.2d 421, 423 (7th Cir.1985). The district court is not so constrained in its

review of the bankruptcy court's interpretations of law. *See, In re Evanston Motor Co., Inc.,* 735 F.2d 1029, 1031 (7th Cir. 1984); *see also, Pullman-Standard v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982).

Section 523(a) in pertinent part, states as follows:

A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt ...

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition....

11 U.S.C. § 523(a).

The Seventh Circuit has summarized the proof necessary to establish a claim pursuant to section 523(a)(2)(A) as follows:

To succeed on a claim that a debt is nondischargeable under section 523(a)(2)(A), a creditor must prove three elements. First, the creditor must prove that the debtor obtained the money through representations which the debtor either knew to be false or made with such reckless disregard for the truth as to constitute willful misrepresentation. *Carini v. Matera,* 592 F.2d 378, 380 (7th Cir.1979). The creditor also must prove that the debtor possessed scienter, *i.e.,* an intent to deceive. *Gabellini v. Rega,* 724 F.2d 579, 581 (7th Cir.1984). Finally, the creditor must show that it actually relied on the false representation, and that its reliance was reasonable. *Carini,* 592 F.2d at 381. The party objecting to discharge must prove the facts establishing each element by clear and convincing evidence. *See In re Brink,* 30 B.R. 28, 30 (Bankr.W.D.Wis.1983); *In re Aldrich,* 16 B.R. 825, 828 (Bankr.W.D.Ky.1982).

*In re Kimzey,* 761 F.2d at 423–24.

In the proceedings below, the Bankruptcy Court held that the plaintiff failed to

---

**2.** Although plaintiff, in the proceedings below, claimed the debt in question was nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6), only the Bankruptcy Court's holding un-

der 11 U.S.C. § 523(a)(2)(A) has been appealed. Therefore, this Court will not address the applicability of 11 U.S.C. §§ 523(a)(4) and (a)(6) to this case.

meet an essential element of the first requirement outlined above, *i.e.*, that there was a transfer of money or property from the plaintiff to the debtor. In paragraph 2, page 4 of its opinion, the Bankruptcy Court stated:

> Here there was no transfer of property or money from the Plaintiff to [Dunn]. [Dunn] has always acknowledged Plaintiff's fifty percent interest in the Hampton Court project. The only transfer made by the Plaintiff was his original payment of $125,000.00 to Wahlin for such interest.

This Court's analysis must begin with Dunn's transaction with Wahlin. Dunn testified at trial that he believed that he was buying Wahlin's fifty percent interest in the partnership; that the partnership owned the property and that he, therefore, was buying a fifty percent interest in the property. (Tr. at 96.)[3] Although Dunn never directly testified that he believed he had replaced Wahlin as general partner in the Wahlin/Chaffin partnership agreement, that was clearly implied. First, Dunn testified that he believed Chaffin was his partner (Tr. at 76). Second, Dunn testified that, at his O'Hare meeting with Chaffin, he pointed out section 6B of the Wahlin/Chaffin partnership agreement, which allowed a monthly payment to the general partner for administering the partnership. Mr. Dunn implies in that testimony that he believed he could have exercised that clause for his benefit had he so desired. (Tr. at 87–88; *see also* Brief for Debtor-Appellee at 7: "In fact, Debtor was entitled to, but did not take, compensation of $6,250.00 per month as the managing partner.").

The court below stated that the September 25, 1979 contract between Dunn and Whalin was "for the purchase of Wahlin's fifty percent interest in the Hampton Court project." The Bankruptcy Court also noted that, in the agreement, "[Dunn] acknowledged the partnership agreement between Whalin and Plaintiff and Plaintiff's fifty percent interest in the Hampton Court project." Thus, the Bankruptcy Court concluded that Dunn purchased Whalin's interest in the project, but apparently did not conclude that Dunn assumed Wahlin's position as general partner in the Wahlin/Chaffin partnership.

■ This Court agrees with that conclusion. Under Illinois law, a general partner in a limited partnership cannot admit another person as a general partner without the written consent or ratification of all the limited partners. Ill.Rev.Stat. ch. 106½, § 52. *See also, In re Harms*, 10 B.R. 817, 821 (D.Colo.1981). No proof was introduced at trial that suggests Chaffin ever consented to the admission of Dunn as a general partner in the partnership.

■ In any event, it appears clear that both Wahlin and Dunn intended that the land would still be considered a partnership asset (Tr. at 81, 96), and an argument could be made that the property remained a partnership asset. The Illinois Supreme Court has said:

> Where real estate is bought with partnership funds for partnership purposes, and is applied to partnership uses or entered or carried on the account of the firm as a partnership asset, it is deemed to be firm property, and in such cases, it makes no difference in a court of equity, whether the title is in all the partners, in one of them, or in a *stranger*. If the real estate is purchased with partnership funds, the party holding the legal title will be regarded as holding it subject to a resulting trust in favor of the firm furnishing the money.

*Korziuk v. Korziuk*, 13 Ill.2d 238, 148 N.E.2d 727, 729 (1958) (emphasis supplied). However, given the fact that Dunn, who was never a member of the partnership, used his own funds to consumate the Dunn/Wahlin transaction, this Court believes that the property was no longer a

---

**3.** Throughout this opinion, "Tr." refers to the transcript of proceedings before Judge Fisher on April 12, 1984.

partnership asset. Instead, a more reasonable construction is that, with consumation of the Wahlin/Dunn transaction, Dunn held legal title to the property and a resulting trust consisting of a fifty percent interest in the property was created on behalf of Chaffin. In any event, it is clear that Chaffin had an equitable claim to fifty percent of the property.

As the Bankruptcy Court found, it also is clear that Dunn acknowledged Plaintiff's fifty percent interest in the property. *See,* slip op. at 4. The Bankruptcy Court noted that both the original purchase agreement between Wahlin and Dunn and Dunn's May 23, 1980 letter to Chaffin clearly acknowledge Chaffin's interest. Moreover, Chaffin himself testified that Dunn recognized Chaffin's interest in the property during their meeting at O'Hare. (Tr. at 22).

The next question is whether Chaffin transfered his fifty percent interest in the property to Dunn. For the reasons set forth below, this Court finds that plaintiff did not establish, by clear and convincing evidence, the transfer of his interest to Dunn.

In the facts outlined above, this Court has noted the proposed transfer of Chaffin's interest to Dunn as outlined in the letter from Chaffin's California counsel to Dunn's attorney. In characterizing that document at trial, Chaffin's counsel stated that it indicates that Chaffin "is prepared to release the interest *in return for the documents stated.*" (Tr. at 60) (emphasis supplied).

It is undisputed that the only document executed pursuant to the offer made by Chaffin's attorney was the promissory note drafted by Chaffin's attorney, forwarded to Dunn's attorney, and subsequently executed by Dunn and returned to Chaffin together with the July 3, 1980 letter quoted in the facts outlined above.

█ Because Dunn did not execute all of the documents required to be executed to accept Chaffin's offer, *i.e.,* both the promissory note and the deed of trust, this Court finds that the proposed settlement that would have transferred Chaffin's interest in the property to Dunn was never consummated, and Chaffin therefore retained his interest in the property.

This conclusion is supported by other factors as well. First, and most importantly, Chaffin failed to prove that he or anyone representing him executed any documents evidencing a transfer of Chaffin's interest to Dunn.

Second, Dunn testified that, by executing the promissory note, he merely intended to give Chaffin additional security and still believed that Chaffin was his "partner." (Tr. at 76.) This testimony is consistent with the tone of Dunn's letter to Chaffin that accompanied the executed promissory note. The letter reads more like a note to a person considered to be an active participant in a venture rather than a person whose interest already has been bought out. Therefore, Dunn did not evidence an intent to accept Chaffin's offer as outlined in the proposal forwarded by Chaffin's attorney. For these reasons, this Court therefore concludes that Chaffin did not transfer his interest in the property to Dunn.

█ The only other possible transfer that might meet the demands of Section 523(a)(2)(A) is the second mortgage obtained by Dunn in July, 1980. However, the Bankruptcy Court found, on the basis of Dunn's testimony, that the mortgage only consolidated earlier construction loans on the project and that Dunn did not personally receive any funds as a result of the mortgage. This finding is not contradicted by any other evidence and is therefore not clearly erroneous.

Accepting this finding, it is clear that Dunn did not receive any money, from Chaffin or anyone else, as a result of the second mortgage. Moreover, if the second mortgage merely consolidated pre-existing debts of the project, it did not alter the value of Chaffin's ownership interest in the project. Therefore, this Court concludes that the circumstances surrounding the second mortgage do not support a claim under Section 523(a)(2)(A).

The Court notes that even if a transfer to Dunn of Chaffin's interest in the property had been consummated, Chaffin failed to prove that Dunn intended to obtain the transfer through false representations or willful misrepresentations. The Bankruptcy Court found that "the Debtor has always acknowledged Plaintiff's fifty percent interest in the Hampton Court project." *See*, slip op. at 4. To reach that conclusion, the Bankruptcy Court must have accepted Dunn's testimony that, by executing the promissory note, he intended only to provide Chaffin with additional security and still considered Chaffin to be his "partner."

This Court is loath to disturb the Bankruptcy Court's judgment concerning the credibility of witnesses. *See*, Fed.R. Bankr.P. 8013; *In re Martin*, 698 F.2d 883, 885–86 (7th Cir.1983). Moreover, as discussed above, Dunn's testimony was consistent with the letter forwarded with the executed note. This Court concludes that the Bankruptcy Court's finding that the debtor intended to honor Chaffin's interest in the property, *see*, slip op. at 3, and therefore did not intend to deceive Chaffin, is not clearly erroneous. Thus, Chaffin also failed to establish, by clear and convincing evidence, the second leg of the *Kimzey* analysis.

### Conclusion

This Court finds that plaintiff failed to prove, by clear and convincing evidence, a fraudulent transfer of money or property from the plaintiff to the debtor, as required under 11 U.S.C. § 523(a)(2)(A). Therefore, the Bankruptcy Court's judgment of dismissal of the dischargeability complaint is affirmed.