**In re Joe W. PRIESTLEY, Debtor.**

**Bankruptcy No. 7–83–01412 MA.**

United States Bankruptcy Court, New Mexico.

Nov. 17, 1988.

See also, Bkrtcy., 94 B.R. 195.

Steve H. Mazer, Albuquerque, N.M., for trustee.

Elvin Kanter, Albuquerque, N.M., for debtor.

Victor E. Carlin, Albuquerque, N.M., for Chreist.

R. Thomas Dawe, Albuquerque, N.M., for Civerolo.

Stevan J. Schoen, Albuquerque, N.M., for Coler.

Walter L. Reardon, Jr., Albuquerque, N.M., for Security Federal.

M.C. Villiard, Albuquerque, N.M., pro se.

George M. Moore, Albuquerque, N.M., for Omega 6 Laufe.

Daniel J. Behles, Albuquerque, N.M., for prospective purchaser.

Louis Puccini, Jr., Albuquerque, N.M., for Melton & Puccini.

Bradford Zeikus, Albuquerque, N.M., for United N.M.

## MEMORANDUM OPINION ON TRUSTEE'S MOTIONS TO APPROVE OFFERS OF PURCHASE AND LIMITED PARTNERS' MOTION FOR RELIEF FROM THE AUTOMATIC STAY

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court for hearing on numerous objections to trustee's motions to approve offers to purchase debtor's interests in four limited partnerships and for hearing on a motion filed by five limited partners in Happy Hollow Ltd. for relief from the automatic stay. After the hearing, the Court took the motions under advisement, and instructed the parties to submit legal memoranda. Having considered the arguments of counsel and being otherwise fully informed and advised, the Court issues this memorandum opinion.

### FACTS

The debtor filed a chapter 11 proceeding in 1983. On October 26, 1987 the Court conducted a hearing on a creditor's motion to dismiss or convert the case and found cause under 11 U.S.C. § 1112(b) to convert the case to chapter 7. An order of conversion was entered on October 30, 1987. On December 7, 1987 the debtor filed amended schedules and statements, listing his interest in six partnerships:

| | |
|---|---:|
| Los Cerrillos 14.1857% | $ 142,000.00 |
| Blue Mountain Park 7.11% | 330,000.00 |
| Sure–Fire Land Development 16.67% | 300,000.00 |
| DeColores Ltd. 9.09% | 120,000.00 |
| Happy Hollow Ltd. 6.67% | 100,000.00 |
| Standing Rock 6.67% | 100,000.00 |
| | $1,092,000.00 |

The trustee's motions relate to debtor's interests in Blue Mountain Park, Sure–Fire Land Development, DeColores Ltd., and Happy Hollow, Ltd. The debtor has a general partnership interest in all four partnerships and a limited partnership interest in one or more as well.

The four partnerships at issue all have substantially identical partnership agreements. They were all executed between 1969 and 1973 and name the debtor as the sole general partner. The duration of each partnership is 50 years, unless sooner terminated by an agreement of all partners. The character of the business of each partnership each is to acquire, own, develop, sub-divide, partition, lease, sell and otherwise deal with certain real property and all mineral and other interests incident thereto.

All four agreements provide that "the death, retirement, or insanity of the general partner dissolves this Limited Partnership". The Happy Hollow agreement adds "provided, however, a majority in interest of the limited partners may select a new General Partner and all limited partners agree to be bound by said selection and continue the partnership." The other three agreements contain no provision for continuing the partnership after the death, retirement, or insanity of the general partner.

Each of the four agreements give the general partner the right to borrow up to a sum certain: $2,000.00 for Happy Hollow and DeColores, $1,000.00 for Sure–Fire Land Development and Blue Mountain Park. Each agreement also gives the general partner the "exclusive right to sell, lease, and otherwise deal with the real property of this Limited Partnership and the minerals thereon," and "the exclusive

right to receive commissions from this Limited Partnership for selling, leasing and otherwise dealing with the real property and the minerals thereon".

The initial capital contribution for each partnership interest was: $13,333.00 in Blue Mountain Park, $13,636.00 in DeColores, $17,000.00 in Sure–Fire Land Development, and $17,600.00 in Happy Hollow. These capital contributions consisted of a down payment plus execution of a 6% interest bearing promissory note to the partnership calling for monthly payments of $125.00 for Happy Hollow and $100.00 for the other three. The promissory notes are all nonrecourse: "in the event of default by a partner in payments, there shall be no liability on the part of the partner beyond the forfeiture of his interest in this Limited Partnership."

The agreements all allow for annual meetings. The limited partners are granted the authority to demand distribution of profits if 75% of the partners, both general and limited, so vote at this annual meeting.

All four agreements provide that the limited interests are freely transferrable after first the general partner and then the other limited partners are given an opportunity to match the terms and conditions of any "bona fide written offer of purchase." Finally, the Happy Hollow agreement provides for a monthly payment of $15.00, and DeColores a $20.00, from each partner, general and limited, for costs associated with the partnership. There is no provision in any of the partnership documents for amending the partnership agreement.

MOTIONS TO APPROVE OFFERS

In all, trustee filed five separate motions to approve offers to purchase partnership interests.

The first motion to approve offer, filed April 19, 1988 requests that the Court approve an offer by Harold Barnett to purchase 100% of the debtor's interest in the

Sure Fire Land Development Company,[1] both as general and limited partner, for $60,000 and subject to certain conditions. Included among those conditions are that the Bankruptcy Court appoint Mr. Barnett as general partner and assign to him alone the rights and obligations listed in the partnership agreement, that all expenses related to the sale will be deducted from the offering price, and that prior to closing all obligations of the partnership will be paid in full.

The second motion to approve offer, filed May 5, 1988 requests approval of an offer by Mark Coler to purchase 1) all of the debtor's general partnership interest, 2) all of the debtor's limited partnership interest and 3) all of the debtor's "rights, duties and compensation and commissions under the partnership agreement", in both the DeColores and Happy Hollow partnerships for a total of $15,000.[2]

The third motion, also an offer by Mark Coler and also filed May 5, 1988, seeks approval for the sale of the debtor's general partnership interest, limited partnership interest, rights, duties, compensation and commissions from Blue Mountain. The offer is $25,000.

The fourth motion, filed on June 7, 1988, relates to an offer by Richard Civerolo, William Bonds and Charles Stuart to purchase "only the investment interests" in the Blue Mountain partnership. The offer is $26,000.

The fifth motion, filed on June 21, 1988, relates to an offer by Mark Coler and, implicitly, withdraws his earlier motion to purchase the debtor's interest in both DeColores and Happy Hollow.[3] In his "revised offer", Coler seeks to purchase only the debtor's general partnership interest, rights and duties in DeColores for $7,500.

The Court notes that the first and fourth offers, by Barnett for Sure Fire and by Civerolo *et al.* for Blue Mountain, had ex-

---

1. That interest is purported to be 1 general partnership unit and 1.5 units of limited partnership interests out of 15 units overall.

2. This motion was mooted by the fifth motion. See *infra.*

3. At the June 2, 1988 hearing on this matter the attorney for Mr. Coler specifically stated his intent was to withdraw the earlier offer.

pired under their own terms by the time the Court had a final hearing on these motions. Although the motions to approve those offers may now be moot the substantive issues raised also apply to the sales of the other interests and are certain to recur when the trustee proposes to dispose of those assets. Therefore, the arguments for and against those sales are considered in this opinion.

Fourteen objections were filed. The most frequently alleged ground in the objections was that the consideration offered was inadequate. At the hearing on the motions the trustee conceded that he had not shopped for the best price or taken any efforts to advertise the interests, and the Court ruled that a further evidentiary hearing would be scheduled regarding the best method to sell these interests if it found that the trustee in fact had the authority to sell them. Therefore, the focus of the matter taken under advisement was what, if anything, the trustee could sell.

It is clear to the Court that there are three distinct types of property involved in these motions: the limited partnership interests, the general partnership interests, and contractual interests to perform real property services in exchange for the exclusive right to receive commissions. Each will be discussed in turn.

*Limited Partnership Interests*

■ A limited partnership interest is personal property. § 54–2–18 NMSA 1978. The bankruptcy estate contains, with few exceptions not relevant here, all legal and equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). The limited partnership interests are estate property. The trustee may sell, other than in the ordinary course of business, property of the estate. 11 U.S.C. § 363(b)(1). Therefore, presumptively the trustee can sell the limited partnership interests.

Only two of the fourteen objections relate directly to the sale of limited partnership interests. The remaining pleadings

either specifically support the trustee's authority to sell, *see e.g. Debtor's Memorandum in Opposition to Trustee's Motion to Sell* at 1–2, or are silent on the issue.

The first of the two objections is by debtor's former attorney. He objects to the sale of anything until he is paid his attorney fees. Without deciding if this is a valid objection or if he has any standing to be heard on this issue the Court finds that it entered an order regarding his fees on September 6, 1988 and that his objection is now moot.

■ The second objection is by Omega Funding Corporation and Stuart Laufe. They claim either a security interest in or ownership of all of the debtor's interests in Sure–Fire Land Development, and argue that the Trustee has proposed no method to protect that interest. If this is true, the objection is well taken. However, this objection goes more to the terms of any eventual sale of the interest rather than to the authority of the trustee to sell the property, and can be better addressed at a hearing on sale. Therefore, the Court finds that the debtor's limited partnership interests are property of the estate and the trustee has the power to sell them.[4]

*General Partnership Interests*

■ A general partner has three types of property rights: rights in specific property, an interest in the partnership, and a right to participate in the management. § 54–1–24 NMSA 1978. There is nothing before the Court that would indicate the debtor had any rights in any specific property. The trustee's motion seeks to sell only the debtor's interests in the partnerships and to assign the debtor's rights to manage those interests.

A partner's interest in a partnership is his share of the profits and surplus, and is personal property. § 54–1–26 NMSA 1978. It is estate property and the trustee may sell it. *See also* § 54–1–27 NMSA 1978. (Conveyance of a partnership interest entitles the assignee to receive in accordance

---

**4.** While a limited partnership interest is freely assignable, § 54–2–19(A) N.M.S.A. 1978, the Court cannot rule that the purchaser will automatically become a substituted limited partner. *See generally* § 54–2–19 N.M.S.A. 1978.

with his contract the profits and upon dissolution the interest to which the assigning partner would otherwise be entitled.) *Accord In re Walsh,* 14 B.R. 385, 388 (Bankr. D.D.C.1981). The debtor's rights to manage the partnership, however, are contract rights, *see e.g., In re Corky Foods, Corp.,* 85 B.R. 903, 906 (Bankr.S.D.Fla. 1988), and will be addressed below with the other contract rights that the trustee seeks to assign. The trustee may sell the debtor's general partnership interests to the extent that the sale is an assignment of profits and interests. § 54-1-27 NMSA 1978.

*Contract Rights*

Each partnership agreement grants the debtor the exclusive right to deal with the real property of the partnerships and the exclusive right to receive commissions therefrom. As the sole general partner, the debtor was also granted the rights to manage the partnerships. This discussion will apply to all those contractual rights.

Six limited partners in Happy Hollow and one in DeColores [5] joined to object on the grounds that the partnerships were dissolved as a matter of law and argued, in essence, that the partnerships must now wind up. Even if this were true the Court does not find this a valid objection to a sale of the interests. The Court finds no authority that prohibits the transfer or sale of an interest in a dissolved partnership. The same parties also argued that the debtor was seriously in default on his obligations, not having made the required monthly payments for costs or on his capital note since 1980, and that the trustee therefore could not assign the contracts until he cured, as required by 11 U.S.C. §§ 365(b)(1)(A) and (f)(2)(A). This objection goes more to the terms of sale than to the trustee's authority to sell and will not be discussed in this opinion. Several objectors, including the debtor, argue that these contract rights are in the nature of executory personal service contracts that are not property of the estate. Therefore, they claim, the trustee has no interest in them to sell or assign.

As a starting point, the Court agrees that the contracts at issue are executory contracts. At the date of conversion to chapter 7 the debtor was the sole general partner in these partnerships and had the duty to "develop, plan, advertise, promote, lease, sell and sub-divide" the property of the partnerships. The overall value of the property in these four partnerships subject to his control was approximately $9.25 million.[6] It was his exclusive right and duty to sell this property and to receive commissions therefrom. Substantial performance remained due from the debtor.

On the other hand, the limited partners were committed to continue paying off the notes for their capital contributions, in some cases to continue making fixed additional monthly payments for costs for the balance of the 50 year term of the partnership, to continue to accept the services of the debtor, and, presumably, to continue with an annual decision of whether to leave accumulated profits in the partnership or demand distribution. Furthermore, the partnership agreements themselves state that failure to make payments is an event of "default" calling for forfeiture of the limited interest. Overall, the Court is convinced that substantial performance remained due from all parties to the contract. *See* H.R. No. 95–595, 95th Cong., 1st Sess., 347, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6303; S.R. No. 95–989, 95th Cong., 2nd Sess., 58, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5844. (Executory contracts are those contracts on which performance remains due to some extent on both sides.) *See also In re Harms,* 10 B.R. 817, 821 (Bankr.D.Colo. 1981) (A limited partnership agreement in which the general partner has a multitude of services to perform and the limited partners are obligated to make substantial future payments is an executory contract. [Applying tests set forth in *King v. Baer,* 482 F.2d 552, 557 (10th Cir.1973) and *Work-*

**5.** The DeColores limited partner subsequently withdrew her objection.

**6.** This amount is based on his fractional interests and estimated values as reported on the debtor's amended bankruptcy schedules.

*man v. Harrison,* 282 F.2d 693, 699 (10th Cir.1960)]). *Accord In re Corky Foods Corp.,* 85 B.R. 903, 906 (Bankr.S.D.Fla. 1988) (limited partnership is executory contract); *In re Rittenhouse Carpets, Inc.,* 56 B.R. 131, 132 (Bankr.E.D.Pa.1985) (limited partnership is executory contract).

Finding that a contract is executory, however, does not answer the question of whether that contract is property of the estate. Courts disagree on this issue: *compare, e.g., Matter of Tonry,* 724 F.2d 467, 469 (5th Cir.1984); *In re Carrere,* 64 B.R. 156, 158 (Bankr.C.D.Cal.1986); *In re Brooklyn Overall Co., Inc.,* 57 B.R. 999, 1002 at n. 2 (Bankr.E.D.N.Y.1986); *Matter of Noonan,* 17 B.R. 793, 797 (Bankr.S.D.N. Y.1982); *In re Scanlon,* 10 B.R. 245, 247 (Bankr.S.D.Cal.1981) (unassumed and/or unassumeable executory contracts are not property of the estate) *with e.g., In re Computer Communications, Inc.,* 824 F.2d 725, 730 (9th Cir.1987); *In re Fitzsimmons,*[7] 725 F.2d 1208, 1211 (9th Cir.1984); *In re Zahneis,* 78 B.R. 504, 505 (Bankr.S.D. Ohio 1987); *In re Herschell,* 43 B.R. 680, 682 (Bankr.E.D.Wis.1984); *Matter of Sunberg,* 35 B.R. 777, 781 (Bankr.S.D.Iowa 1983), *aff'd.,* 729 F.2d 561 (8th Cir.1984) (executory contracts are property of the estate). The Court notes, however, that in this case the distinction is only academic because 11 U.S.C. § 365(f) allows a trustee to assume or assign executory contracts whether or not they are property of the estate.

Bankruptcy Code section 365(f)(1) allows a trustee to assign many of the debtor's executory contracts, even if the contracts themselves forbid assignment. *In re Pioneer Ford Sales, Inc.,* 729 F.2d 27, 28 (1st Cir.1984). Section 365(c) operates as an exception to the general rule:

> The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

> (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract of lease prohibits or restricts assignment of rights or delegation of duties; and

> (B) such party does not consent to such assumption or assignment.

"The theory of this section is to prevent the trustee from assigning (over objection) contracts of the sort that contract law ordinarily makes nonassignable." *In re Pioneer Ford Sales, Inc.,* 729 F.2d at 28. Presumably, then, if a trustee has consent to substituted performance an executory contract is assignable. To read section 365(c)(1) otherwise would render subsection (B) meaningless, because then a trustee could never assume or assign ordinarily non-assignable contracts whether or not the other party consented.

Therefore, the issue in this case is not whether the contracts are property of the estate, but whether "applicable law" allows the limited partners to veto assignment of those contracts. If they may not veto, the trustee has the authority under section 365(f) to assign them. On the other hand, if the limited partners may veto assignment, the trustee may assign them only with the consent of all limited partners under section 365(c)(1)(B). *See In re Pioneer Ford Sales, Inc.,* 729 F.2d at 30 (State law provided that certain franchises were assignable only with consent, which was not to be unreasonably withheld; under the facts of the case the Court found a manufacturer to be reasonable in withholding its consent to an assignment and ruled that the franchise was therefore unassignable.) *See also In re Braniff Airways, Inc.,* 700 F.2d 935, 943 (5th Cir.1983) (Trustee may not assume or assign lease if applicable law excuses the lessor from an assignee *and if* the lessor does not consent.); *In re Sunset*

---

**7.** Debtor cites this case as supporting his argument. While it does hold that post-petition earnings from personal services are not property of the estate it also holds that earnings attributable to executory contracts (e.g. fee agreements, employment contracts) are estate property. *Fitzsimmons,* 725 F.2d at 1211.

*Developers,* 69 B.R. 710, 713 (Bankr.D.Idaho 1987) (partnership agreement cannot be assigned or assumed without consent of the parties). *But see Matter of Tonry,* 724 F.2d 467, 469 (5th Cir.1984) ("The trustee may not assume an executory contract if, under applicable law, the non-debtor party is free to decline performance by the trustee." [ignoring the section 365(c)(1)(B) requirement that non-debtor party refuse consent]).

Under New Mexico law the limited partners can veto assignment. Section 54–2–9 of the Uniform Limited Partnership Act provides:

> A general partner shall have all the rights and powers and be subject to all the restrictions and liabilities of a partner in a partnership without limited partners, except that without the written consent or ratification of the specific act by all the limited partners, a general partner or all of the general partners have no authority to:
>
> . . . . .
>
> (5) admit a person as a general partner.

§ 54–2–9 NMSA 1978. Therefore, under the New Mexico statutes, the limited partners can clearly decline to accept performance from someone other than the debtor. *Accord Chaffin v. Dunn,* 56 B.R. 736, 740 (N.D.Ill.1985). *See also* Kaster and Cymbler, *The Impact of A General Partner's Bankruptcy Upon the Remaining Partners,* 21 Real Prop.Prob & Tr.J. 539, text accompanying n. 14 at 541. Therefore, the trustee can assign the debtor's executory contracts only with the consent of all of the limited partners.

■ The Court cannot find that consent has been given in this case. In his brief in support of the trustee's motions Mr. Coler represented to the Court that he sent notices to each limited partner of his request to be the new general partner and that, at least with regard to DeColores and Blue Mountain Park, no objections were filed. The Court has three answers to this. First, representations are not evidence. Second, on May 12, 1988 Richard Civerolo, a limited partner in Blue Mountain Park, did file an objection in which he stated that

"the offeror is not a responsible party in whom he would repose confidence in the management of the affairs of the limited partnership." Third, even if the representations were true the Court finds that silence and inaction do not constitute the consent required either by the Bankruptcy Code or the Uniform Limited Partnership Act. The trustee's motions will therefore be denied without prejudice to the extent they attempt to assign executory contracts.

■ The Court has an alternative reason to deny the trustee's motion as it relates to executory contracts. 11 U.S.C. § 365(d)(1) states:

> In a case under chapter 7 of this title if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60–day period fixes, then such contract or lease is deemed rejected.

The debtor's chapter 11 case was converted to chapter 7 on October 30, 1987. The trustee has not assumed any executory contracts in this case. The sixty day period during which the trustee could have assumed these contracts under section 365(f) has expired. The contracts are deemed rejected as a matter of law under section 365(d)(1). The automatic rejection terminated the contracts, resulted in breach, and gave the limited partners and/or the partnerships the right to assert a claim for damages as a prepetition claim. *See* 11 U.S.C. § 365(g)(1). *See also In re Tall,* 79 B.R. 291, 293 (Bankr.S.D.Ohio 1987); *In re Ashley,* 41 B.R. 67, 70 (Bankr.E.D.Mich. 1984). A trustee cannot compel performance on rejected contracts. *In re Preston,* 53 B.R. 589, 592 (Bankr.M.D.Tenn.1985). Therefore, trustee has nothing to assign.

In summary, the Court finds that the trustee has the authority to sell 1) the debtor's limited partnership interests and 2) the debtor's general partnership interests to the extent that the sale is an assignment of economic interests. The trustee does not under the current record have the authority to sell, assume, or assign any

executory contract aspects of the debtor's general partnership interests or executory contracts the debtor had with the partnership.

■ Although the Court rules that the trustee may not convey the debtor-general partner's rights and duties as this case now stands, the Court does not rule that he may not do so under any circumstances. If the limited partners were to waive rejection of the executory contracts, *see e.g. Matter of Lew Mark Cleaners Corp.*, 86 B.R. 331, 335 (Bankr.E.D.N.Y.1988); *In re Fosko Markets, Inc.*, 74 B.R. 384, 388 (Bankr.S.D. N.Y.1987), and affirmatively consent to substituted performance by a substitute general partner, a future motion might be successfully presented to the Court.

## MOTION FOR RELIEF FROM AUTOMATIC STAY

Five limited partners in Happy Hollow filed a motion under 11 U.S.C. § 362 seeking an order lifting or modifying the automatic stay to allow:

1.  the sending of written notice and demand to the debtor pursuant to the default and forfeiture provisions of the partnership agreement, and

2.  to take other actions under state law with regard to the debtor's interests in the partnership, including:

    a.  appointment of a receiver for the partnership

    b.  removing the debtor as general partner

    c.  dissolution of the partnership

    d.  winding up of the partnership, and

    e.  otherwise terminating all of the debtor's rights in the partnership.

■ Bankruptcy Code section 362(d) provides that the Court shall grant relief from the stay "for cause". Cause may exist whenever the stay harms the creditor and lifting the stay will not unjustly harm the debtor or other creditors. *In re Chirillo*, 84 B.R. 120, 123 (Bankr.N.D.Ill.1988) (*citing In re Opelika Mfg. Corp.*, 66 B.R. 444, 448 (Bankr.N.D.Ill.1986)).

■ At the outset, the Court notes that the automatic stay pertains only to the actions involving the debtor or property of the estate. *See* 11 U.S.C. § 362. *See also In re Apollo Molded Products, Inc.*, 83 B.R. 189, 191 (Bankr.D.Mass.1988). The Happy Hollow limited partnership and its assets are not property of the estate. *See In re Manning*, 831 F.2d 205, 207 (10th Cir.1987). Therefore, the automatic stay does not prevent actions by the limited partners (or anyone else) against the limited partnership itself. The automatic stay would apply only if those actions directly impacted upon the debtor or property of the estate.

■ The first relief the movants seek is to send written demand to the debtor,[8] presumably as a prelude to forfeiture. It is unclear to the Court who would send this notice, or on what authority. The partnership agreement allows only the general partner to send the required notice. Assuming the limited partners did have the authority to send it, however, the Court finds that the automatic stay applies and that the movants have not shown "cause" to grant this relief. First, they have not shown how they would be harmed if the notice were not sent. It may be true that an eventual forfeiture of the interest would inure to their benefit as remaining partners but denying this relief at this time cannot be construed as harmful to their current interest. Second, allowing a forfeiture of the interest would deplete the estate and reward the movants at the expense of other unsecured creditors. Therefore, the automatic stay will not be terminated or modified as to the first relief requested.

The second relief requested, however, is substantially different. Basically, the limited partners seek to pursue their state law remedies against a partnership not before this Court: to have a receiver appointed, to remove the sole general partner, and to dissolve and wind up the partnership. To the extent that the automatic stay applies to these activities, the Court finds cause to modify it. Under the discussion above re-

---

**8.** The trustee may be the more appropriate party because the partnership interests are estate property.

garding the trustee's motion to approve offers the Court found that executory contracts were rejected. Therefore, there is no current general partner. Rejection resulted in breach; the partnership may have a claim in this debtor's bankruptcy yet have no partner having the authority to file a proof of claim. If the partnership is already dissolved,[9] the partners should be given the opportunity to choose between continuing the business, § 54–2–20 NMSA 1978, or having it wound up, § 54–2–10(A)(3) NMSA 1978, with its assets distributed, § 54–2–23 NMSA 1978. If it is not dissolved, the limited partners have alleged grounds under which a state court may find that dissolution by decree of court is warranted. *See* § 54–1–32 NMSA 1978. It seems inequitable to condemn the limited partners to a legal purgatory pending the resolution of a chapter 7 bankruptcy that is only incidentally related to their investment in a non-debtor. By careful structuring of an order that terminates the automatic stay the debtor and trustee will not be harmed. No forfeitures will be allowed. On the other hand, all parties will be benefitted by a determination of the status of these partnerships. Claims can be determined and filed; this would aid in the resolution of the bankruptcy administration. The partners will either continue the businesses or liquidate them; in either event the trustee will gain a better estimate of the value of his interests. Finally, granting this relief will not have any detrimental impact on other creditors. Forfeitures of estate property will not be allowed.

An appropriate order shall enter.

## ORDER

This matter came before the Court for hearing trustee's motions to approve offers to purchase debtor's interests in four limited partnerships and for hearing on a motion filed by five limited partners in Happy Hollow Ltd. for relief from the automatic stay. For the reasons set forth in the memorandum opinion entered in connection herewith,

IT IS ORDERED that trustee's motions to approve offers are denied without prejudice.

IT IS ORDERED that counsel for the limited partners in Happy Hollow Ltd. shall prepare a form of order modifying the automatic stay in conformity with the memo-

---

**9.** The Court is of the impression that this is the case, but does not so rule. The partnership and its partners are not parties before the Court. *Compare In re Harms,* 10 B.R. at 819 (trustee filed a complaint against seven limited partnerships seeking a determination that they were dissolved; "all of the limited partners, with the exception of the debtor, join the trustee in his position.").

The Court disagrees with the movants that the partnership was dissolved by the filing of a chapter 11 petition. *See In re Corky Foods Corp.,* 85 B.R. 903, 906 (Bankr.S.D.Fla.1988) (a partnership is an executory contract; 11 U.S.C. § 365(e)(1)(B) prohibits termination conditioned on the filing of bankruptcy); *In re B C & K Cattle Company,* 84 B.R. 69, 71 (Bankr.N.D.Tex.1988) (Uniform Partnership Act does not call for dissolution when a partner files for reorganization); *In re Safren,* 65 B.R. 566, 569 (Bankr.C.D.Cal.1986); *In re Rittenhouse Carpet, Inc.,* 56 B.R. 131, 132–33 (Bankr.E.D.Pa.1985). *See also* McBride, *Bankruptcy and Partnership Dissolution: Making a federal case,* 1988 Norton Bankruptcy Law Adviser 10 (October 1988) 6, 10. ("The more recent and better reasoned cases which have addressed the issue ... have correctly found that the partnership is not dis-

solved."); Kaster and Cymbler, *The Impact of a General Partner's Bankruptcy upon the Remaining Partners,* 21 Real Prop.Prob & Tr.J. 539, 540 (1986) (Nothing in the Uniform Partnership Act compels dissolution if a partner files a Chapter 11 petition.).

Through reasoning similar to that in *Corky,* the Court also sees no reason that conversion to chapter 7 or the filing of a chapter 7 would dissolve a partnership. The language of 11 U.S.C. § 365(e)(1)(B) speaks in terms of the commencement of a "case" under title 11, not a chapter 11 case under title 11. If the trustee had assumed and then assigned the executory partnership agreement to an universally accepted substitute general partner, within the 60 days allowed by section 365(d), and with a corresponding benefit to the estate, the Court sees no purpose served by finding the partnership dissolved. In this case, however, the contract was deemed rejected under section 365(d). This rejection is not related to the "commencement" of a case under title 11, and section 365(e)(1)(B) should not apply. The rejection resulted in there being no general partner. If the issue were before the Court, it would find that the partnership was dissolved upon the rejection of the contract.

randum opinion for presentation to the Court.