Alice K. Urban, Plaintiff-Appellee, v. Marcella Brady, Individually and as Administrator of the Estate of and as an Heir at Law of Daniel J. Brady, Deceased; Mary Jane Le Maire and Margaret Ann Brady, a Minor, as Heirs at Law of Daniel J. Brady, Deceased, Defendants-Appellants.

Gen. No. 51,076.

First District, Third Division.

August 10, 1967.

Appellee's petition for rehearing denied September 21, 1967.

Appellants' petition for rehearing denied September 21, 1967.

McCarthy & Toomey, of Chicago (John E. Toomey, Timothy C. Toomey, and Eugene M. Wiase, of counsel), for appellants.

Carr & O'Rourke, of Chicago (Donald A. Carr and Robert J. O'Rourke, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

In this suit the plaintiff seeks to establish that a partnership existed between herself and her brother, the deceased Daniel J. Brady, in a service station located at 832 West Madison Street, Oak Park, Illinois. Defendants, heirs at law of Daniel J. Brady, deny the existence of such partnership. The matter was referred to a master in chancery who heard the evidence and reported that a partnership did exist as charged by plaintiff and recommended that an accounting be taken. The court approved and confirmed an initial and a supplementary report made by the master and re-referred the cause to

the master for an accounting. Defendants have appealed from that decree.

The business in question was originally financed by Mary Brady, the mother of Alice Urban and Daniel Brady. Mrs. Brady testified that in 1926 she gave her children from $12,000 to $14,000 to buy property which would give them an income for their later years. A partnership was formed that year between the plaintiff, her husband Otto Urban and Daniel Brady. With the funds provided by Mary Brady, the three of them bought the property in question and constructed a service station. From 1926 to 1939 Otto Urban and Daniel Brady operated the business, working equal hours and sharing the profits equally. About the year 1939 it was discovered that Otto had misappropriated partnership receipts. He withdrew from the business and assigned his interest to Alice and Daniel in equal shares. Thenceforth Alice and Daniel held undivided half interests in the realty, the mortgage having been paid out of business earnings. The property was conveyed to Alice and Daniel as tenants in common on May 21, 1940.

After Otto Urban left the business Daniel operated the station by himself, but continued to file partnership tax returns which show that from 1940 to 1955 Alice received small annual payments from the business (usually in the sum of $120) while Daniel withdrew several thousand dollars annually. In addition to the income tax returns Daniel filed monthly sales tax returns, signing each one and giving his title as "partner." The following question appears on each return, "Has there been any change of ownership?" and on each return the answer was "No." Personal property tax bills for the years from 1944 to 1955 were rendered to "West Madison Street Service Station, A. J. Urban and D. S. Brady." Utility bills were likewise addressed to Urban and Brady, and insurance policies covering the business designated the plaintiff and Daniel Brady as the assured. A clerk

of the County Court of Cook County testified that a certificate was issued pursuant to the Assumed Business Name Statute (Ill Rev Stats, c 96, § 4 (1965)), stating that the West Madison Service Station (the name under which the business was operated) was owned by D. J. Brady and Alice Urban.

In addition to the documentary evidence of the partnership, several witnesses testified that in the course of conversation Daniel several times described the business arrangement as a partnership between Alice and himself. The testimony reveals that the plaintiff and her brother Daniel quarreled frequently about the distribution of profits of the enterprise. Mary Brady testified that Alice asked Daniel on several occasions for a larger distribution and that he replied that the business was not making any money. After a series of such quarrels however Daniel agreed to distribute to Alice ½ cent per gallon of gasoline sold, rather than the fixed payment previously distributed.

It is defendants' contention that the payments to Alice were rent for her half of the realty. This argument by the defendants is not based on anything oral or written that changed the initial character of the relationship. They argue that the withdrawals from the business were so disproportionate that the arrangement between the parties must have been a lease rather than a partnership. This does not follow. Alice protested the small amounts paid to her. The service station was a family enterprise from the outset and it is not uncommon for members of a family to be informal and lax in their business dealings with each other.

The requisites of a partnership are that the parties have joined together to carry on a trade or venture for their common benefit, each contributing property or services and having a community of interest in the profits. This partnership came into existence at the behest of and with funds provided by the mother. This

161

is established by the mother's testimony. Written articles of partnership are not essential to the formation of a partnership. Such factors as the mode in which the parties have dealt with each other, the mode in which each has with the knowledge of the others dealt with other people, and the use of a firm name have been deemed material in determining the existence of a partnership. Van Buskirk v. Van Buskirk, 148 Ill 9, 35 NE 383; Einsweiler v. Einsweiler, 390 Ill 286, 61 NE2d 377; Olson v. Olson, 66 Ill App2d 227, 213 NE2d 95. The evidence amply supports the chancellor's finding that the plaintiff and Daniel Brady were partners.

■ Defendants further contend that plaintiff's claim is barred by laches because she failed to bring suit until after Daniel Brady had died. Laches depends on the facts of each case. No simple yardstick can be devised by which a plaintiff's diligence can be measured. The fact that a family relationship existed, with the consequent hesitancy to litigate, is certainly a proper matter to be considered.

■ ■ As a general rule an action for a partnership accounting cannot be brought until the partnership has been dissolved. Einsweiler v. Einsweiler, 390 Ill 286, 61 NE2d 377. The evidence supports the plaintiff's contention that the partnership between herself and her brother was not terminated until Daniel's death. Thereafter the plaintiff was prompt in protecting her rights and was not guilty of laches.

The final point raised is the plaintiff's cross-appeal for reasonable expenses and attorney's fees under section 41 of the Civil Practice Act (Ill Rev Stats, c 110, § 41 (1965)). That section provides for such an allowance where allegations or denials are made without reasonable cause and are found to be untrue. No specific finding of this sort was made by the chancellor and he acted properly in denying the plaintiff's motion. Master's

fees were properly assessed against the defendants and to that extent the burden of this litigation was thereby allocated to them.

There was ample evidence to support the chancellor's finding that a partnership existed between the parties and the decree is affirmed.

Decree affirmed.

SULLIVAN, P. J. and DEMPSEY, J., concur.