BERNARD M. SUSMAN *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. CYPRESS VENTURE *et al.*, Defendants-Appellants and Cross-Appellees (Norman Asher, Defendant and Cross Appellee).

First District (3rd Division)  No. 1—87—1532

Opinion filed August 9, 1989.—Rehearing denied September 15, 1989.

Sperling, Slater & Spitz, and Kevin M. Forde, Ltd., both of Chicago (Bruce S. Sperling, Eugene J. Frett, Kevin M. Forde, and Katrina Veerhusen, of counsel), for appellants.

Burke, Griffin, Chomicz & Wienke, P.C., of Chicago (Stephen A. Cohen and Douglass G. Hewitt, of counsel), for appellees.

JUSTICE RIZZI delivered the opinion of the court:

Defendants, Cypress Venture *et al.* (the Ashers), appeal from an order of the circuit court of Cook County which approved a court-ordered accounting, judicial sale and distribution of the assets of the dissolved partnership between the Ashers and plaintiffs, Bernard Susman *et al.* (Susman). Susman cross-appeals from certain provisions of the court order. On appeal, the Ashers contend that (1) the trial court erred in its interest accrual ruling which terminated post-dissolution interest on their capital contributions as of April 3, 1981, and divided the net proceeds of the judicial sale equally between the Ashers and Susman and (2) the trial court erred in failing to vacate the confirmation of the judicial sale. On cross-appeal, Susman contends that (1) the trial court erred in granting the Ashers payment of interest on capital contributions after their September 27, 1974, expulsion of Susman from the partnership; (2) the trial court erred in permitting the Ashers to charge the partnership with $90,175 in legal fees paid to the Ashers' attorneys; and (3) the trial court erred in permitting the Ashers to pay Hilltown Associates (a corporation wholly owned by the Ashers) $56,642.35 in management fees from partnership funds. We affirm in part; reverse in part and remand with directions.

This litigation stems from a 1968 partnership agreement between Susman and the Ashers. The parties entered into a partnership to purchase and develop approximately 945 acres of property in Lake County, Illinois. According to the terms of the agreement, Susman was responsible for the management and development of the property. The Ashers contributed the cash assets and were given the right to make all decisions for the partnership until such time as their capital was returned or Susman contributed an equal amount of capital. Any profits generated were first to be distributed to the Ashers until their capital contribution plus imputed interest was returned and, thereafter, the profits were to be divided equally between the Ashers and Susman.

In 1976, the partners began the long course of litigation which culminated in this appeal. In 1981, the circuit court ordered the dissolution and winding up of the partnership, an accounting and judicial sale of partnership property. In addition, the circuit court found that Susman was entitled to $645,000 in damages (an amount he would have realized from a partnership deal which the Ashers rejected) or his share of the proceeds of the judicial sale, whichever sum was larger. The Ashers appealed from that decision. This court affirmed the circuit court's finding that the Ashers breached the par-

ties' agreement and expelled Susman from the partnership, thereby justifying the court-ordered dissolution. However, this court reversed that portion of the circuit court decision which awarded Susman money damages. (*Susman v. Cypress Venture* (1982), 114 Ill. App. 3d 668, 449 N.E.2d 143.) The case was then remanded to the circuit court for an accounting and judicial sale.

In June 1986, following the accounting, the circuit court entered an order finding that (1) the Ashers are entitled to payment of management and legal fees from partnership funds; (2) the interest accrued on the Ashers' total capital contribution shall cease as of April 3, 1981 (the date the partnership was legally dissolved); and (3) all partnership real property and noncash assets are to be sold at the judicial sale. In October 1986, the partnership property was sold at judicial sale to Amli Realty Company for $3,350,000. Susman was a joint venturer in the purchase. When the Ashers discovered that Susman was a party to the purchase, they moved to vacate the confirmation of the judicial sale. In April 1987, the circuit court entered an order which (1) denied the Ashers' motion to vacate the confirmation of judicial sale; (2) ordered the distribution of the cash assets of the partnership in accordance with the previous accounting; and (3) ordered that Susman and the Ashers each receive 50% of the net income from the investment proceeds of the judicial sale. This appeal followed.

The Ashers first argue that the circuit court erred in ordering the termination of their interest earned on capital contributions as of April 3, 1981, and in distributing the net proceeds of the judicial sale equally between the partners in accordance with the circuit court's interest accrual ruling. In support of this view, they assert that the partnership agreement clearly provides that the Ashers were to continue to accrue interest on their capital contributions after dissolution and until the partnership was wound up. The Ashers also contend that the circuit court should have distributed the proceeds of the judicial sale according to the parties' respective partnership shares. We disagree.

Section 2.5 of the Asher/Susman Agreement (Agreement), entitled "Interest on Total Capital Contributions," provides:

> "(a) In the event that the Total Capital Contribution of the Asher Partners exceeds the Total Capital Contribution of the Susman Partners at the end of any calendar month during the Period of Existence of this Partnership, the Partnership will credit monthly the Asher Partner's Capital Accounts with guaranteed payment of interest with an amount equal to one

percent (1%) above the prime rate of interest obtaining from time to time on short term commercial loans at the First National Bank of Chicago (or its successors) *times* the amount of such excess."

Section 1.5, paragraph (ee), of the Agreement defines "period of existence" as "the period from the date of the execution of this Agreement until the Partnership affairs are wound up by the General Partners, their assigns or legal representatives after the dissolution of the Partnership." The term "dissolution" is not specifically defined, but it is referred to in article VI of the Agreement. Section 6.1 provides:

"(a) The Partnership shall be dissolved upon the first to occur of the following:

(i) The death, insanity, involuntary dissolution, bankruptcy or assignment for the benefit of creditors of any Partner; or

(ii) The mutual consent of the Partners to dissolve and terminate the Partnership; or

(iii) The Sale of Property

(iv) December 31, 2067."

■ A party to a contract is discharged from his duty to perform where there is a material breach of the contract by the other party. (*Eager v. Berke* (1957), 11 Ill. 2d 50, 54, 142 N.E.2d 36, 38.) The issue of whether or not a breach of contract is "material," thereby discharging the other's duty to perform, is a question to be decided on the inherent justice of the matter, and a reviewing court will not disturb the findings of the trier of fact unless clearly against the weight of the evidence. *Lundberg v. Church Farm, Inc.* (1986), 151 Ill. App. 3d 452, 462-63, 502 N.E.2d 806, 814.

■ Section 2.5 of the Agreement which governs the distribution of interest on total capital contributions, by its terms, is only applicable during the "period of existence of [the] partnership." The Ashers' expulsion of Susman from the partnership as of September 27, 1974, resulted in a dissolution of the partnership. Although the Agreement defines period of existence as inclusive of the period after dissolution, the Agreement as indicated in section 6.1 did not contemplate dissolution caused by expulsion. The trial court found that the Ashers' breach of contract was material enough to discharge Susman from any obligation to pay post-dissolution interest under the terms of the partnership agreement. The contract provision which entitled the Ashers to receive interest on their capital contributions became inapplicable when the partnership was terminated by their breach. The trial court's findings of fact which are clearly supported by the

evidence have previously been affirmed by this court. (*Susman v. Cypress Venture* (1982), 114 Ill. App. 3d 668, 449 N.E.2d 143.) We therefore conclude that the trial court did not err in denying the Ashers post-dissolution interest on capital contributions where their material breach of contract resulted in the termination of the partnership, the repudiation of its agreement and a court-ordered dissolution.

■ The Ashers further contend that the trial court erred when it divided the net proceeds from the judicial sale on a 50/50 basis. They allege that the division was erroneous because the proceeds should have been divided on the basis of their partnership interest which exceeded 50%.

Section 4.7 of the Agreement provides for the division of the net profits and losses of the partnership. Paragraph (a) of section 4.7 specifically provides that both Susman and the Ashers are to equally share the partnership's net profits and losses. Moreover, under common-law breach of contract principles and the Uniform Partnership Act, an aggrieved party is entitled to a damage award which equals the profit that would have been realized if the contract had been fully performed. (Restatement of Contracts §329 (1932); Ill. Rev. Stat. 1985, ch. 106½, par. 38(2)(a)(II).) Since the trial court distributed the net proceeds or profits from the judicial sale in accordance with the terms of the Agreement and common-law breach of contract principles, we conclude that the trial court did not err when it divided the net proceeds of the judicial sale equally between the partners.

The Ashers next argue that the trial court erred in failing to vacate the confirmation of the judicial sale. It is their position that Susman's failure to disclose his agreement to purchase the partnership property through a joint venture with Amli Realty constituted a breach of his fiduciary duty to the Ashers. We disagree.

■ It is the policy of the law to give permanence and stability to judicial sales. (*Checkley & Co. v. Citizens National Bank* (1969), 43 Ill. 2d 347, 350, 253 N.E.2d 441, 443.) Trial courts have broad discretion in approving or disapproving sales made at their direction, and their decision will not be disturbed absent an abuse of discretion. (*Maywood-Proviso State Bank v. Cokinis* (1973), 11 Ill. App. 3d 659, 662, 297 N.E.2d 325, 327.) In every dissolution of partnership where judicial sale follows, it is permissible for one or more of the partners to purchase the partnership property. The purchase by a partner is not improper and will not be set aside where (1) grounds exist for dissolution; (2) the judicial sale is properly conducted; and (3) the

partner who purchases is not guilty of any breach of fiduciary duty owed to his co-partners. (*Mandell v. Centrum Frontier Corp.* (1980), 86 Ill. App. 3d 437, 451, 407 N.E.2d 821, 832.) Further, when a partnership is dissolved, the fiduciary relationship between the partners is terminated and they are free to initiate new business ventures. *Bluestein v. Davis* (1967), 86 Ill. App. 2d 61, 67, 230 N.E.2d 61, 64.

■ In the present case, after a hearing on the Ashers' motion to vacate the confirmation of judicial sale, the trial court concluded that (1) the public sale was properly conducted and open to all parties and (2) the agreement between Amli Realty and Susman to purchase the Asher/Susman partnership property was a legitimate business venture in which Susman was legally entitled to participate. Accordingly, the trial court denied the Ashers' motion. Here, it is clear that (1) the Ashers' expulsion of Susman from the partnership established grounds for the dissolution; (2) there were no improprieties in the operation of the judicial sale; and (3) although the partners' fiduciary relationship was terminated when the partnership was dissolved, assuming *arguendo* that it still existed, Susman was not guilty of breach of his fiduciary duty. We therefore conclude that the trial court did not err in denying the Ashers' motion to vacate confirmation of the judicial sale.

■ On cross-appeal, Susman first argues that the trial court erred in granting the Ashers payment of interest on their capital contributions after the September 27, 1974, expulsion of Susman from the partnership. We agree.

As previously discussed, section 2.5 of the Agreement governs the calculation and distribution of interest on the Ashers' capital contributions. The Agreement provides for the distribution of interest payments to the Ashers during "the period of existence of the partnership." The partnership's existence ceased when the Ashers expelled Susman on September 27, 1974. However, the circuit court ordered that the interest earned on capital contributions be allowed to accumulate until April 3, 1981, the date of the court-ordered dissolution. The trial court erred when it determined that the partnership remained in existence until it was dissolved by court order.

A dissolution of a partnership is a change in the relationship of partners caused by any partner ceasing to be associated in the carrying on, as distinguished from the winding up, of the business. (*Trecker v. Trecker* (1948), 334 Ill. App. 263, 78 N.E.2d 843 (abstract of opinion).) When the Ashers expelled Susman from the partnership on September 27, 1974, he ceased involvement in the carrying on of the partnership business. Therefore, the partnership was dissolved on

the date of expulsion; the subsequent court-ordered dissolution only formalized the demise of the partnership.

We therefore conclude that the trial court erred in granting the Ashers payment of interest on capital contributions after their September 27, 1974, expulsion of Susman from the partnership. Accordingly, we reverse page 3, paragraph 2, of the circuit court's June 24, 1986, order which provided that the Ashers receive interest on their capital contribution until April 3, 1981, and order that the Ashers' interest payments terminate as of September 27, 1974. We remand this matter to the trial court for recalculation of the Ashers' interest payment in a manner consistent with this opinion.

Susman next argues that the trial court erred in permitting the Ashers to charge the partnership with $90,175 in legal fees paid to the Ashers' attorneys. We agree.

The schedule of legal fees for Hilltown Partnership/*Susman v. Cypress Venture* prepared by the Ashers indicates that $51,028 in legal fees paid to two law firms for representation of the Ashers in the *Susman v. Cypress* litigation were paid from partnership assets. In addition, the Hilltown financial statements prepared by Weber & Bratt, Ltd., accountants for the Ashers, indicate that the partnership was charged $13,000 for a real estate appraisal prepared for use by the Ashers' attorneys in the *Susman v. Cypress Venture* case, as well as $6,000 and $10,344.92 for legal representation of the Ashers in the *Susman v. Cypress Venture* matter. Also, the Hilltown Partnership's schedule of receipts and disbursements for the period of January through December of 1986 indicates that another law firm was paid $9,802 from partnership funds for legal services performed on behalf of the Ashers in conjunction with the judicial sale of partnership property. In total, the Ashers' attorneys were paid $90,174.92 from partnership funds.

As a general rule, attorney fees and expenses of litigation are not allowable to a successful party in the absence of a statute or agreement which specifically authorizes payment. (*Ritter v. Ritter* (1943), 381 Ill. 549, 552, 42 N.E.2d 41, 43.) The Ashers cite the case of *People ex rel. Schacht v. Main Insurance Co.* (1983), 114 Ill. App. 3d 334, 448 N.E.2d 950, 953, to support the proposition that they were entitled to use partnership assets to pay legal fees because in doing so they were defending the partnership and its interests. However, unlike the *Main Insurance Co.* case, the Ashers/Susman dispute involved a partnership, not a corporation that had been placed in receivership. Further, the Cypress v. Schaumburg State Bank and *Susman v. Cypress Venture* lawsuits both concerned access to and con-

trol over partnership property. The Ashers were not seeking to preserve the partnership entity, but rather to solidify their dominance and control while excluding Susman from any participation in partnership affairs.

██ Because we find that the legal expenses incurred by the Ashers were not related to their representation of the partnership as an entity, but rather to their individual interests, we hold that the trial court erred in permitting the Ashers to charge the partnership with $90,174.92 in legal fees paid to the Ashers' attorneys.

Accordingly, we reverse paragraph 1, page 3, of the circuit court's June 24, 1986, order denying Susman's objection to the partnership's payments of legal fees to the Ashers' attorneys and that portion of paragraph 1 of the circuit court's January 16, 1987, order which denied Susman's objections to the partnership's payment of legal fees to the Ashers' attorneys. We remand this matter for a recalculation of the allowable partnership disbursements in a manner consistent with this opinion.

██ Finally, Susman argues that the trial court erred in permitting the Ashers to pay Hilltown Associates (a corporation owned by the Ashers) $56,642.35 in management fees from partnership funds. We agree.

Section 3.5 of the Agreement provides:

> "(a) Except as otherwise provided for in this Article III no partner shall receive any Salaries and Fees, directly or indirectly, from the Partnership for any services rendered to the Partnership in connection with the management of the business of the Partnership, Sale of Property, the refinancing of the property or otherwise."

Section 3.2 of article III provides that "[a]fter completion of all or substantially all of the development and construction of all or a portion of the Real Property (herein the Completed Projects), the management of the affairs and activities of the Completed Projects shall be in the General Partner and, except as otherwise expressly provided herein, all decisions affecting Completed Projects shall be made by the General Partner. The General Partner may engage independent management companies to act as the agents for all or any of the projects. The General Partner or the designated independent management agents shall be entitled to reimbursement by the Partnership for all out-of-pocket direct management expenses related to the Completed Projects ***."

The Agreement prohibits payment of management fees to a general partner except as provided within article III. Section 3.2 of arti-

cle III provides that the general partners may be reimbursed for costs associated with the management of completed projects. It is clear from the Agreement that the parties intended this provision to govern the management of developed and improved portions of real property. The management fees in question where paid to Hilltown Associates for the management of undeveloped real estate. The management agreement between Hilltown Associates and the partnership is entitled "Land Management Agreement" and provides that Hilltown Associates arrange for crop and livestock programs and collect rents from lessees of the partnership's land. The agreement further provides that Hilltown Associates be paid 10% of the partnership's gross receipts annually for "such farm operations as may be on a crop-share basis" or 10% if the farm is operated on a cash lease basis.

In light of the provisions of the Agreement, and the terms of the land management agreement between Hilltown Associates and the partnership, we find that the Ashers (as the sole owners of Hilltown Associates) improperly received partnership funds in derogation of the express terms of the Agreement. We therefore find that the trial court erred in permitting the Ashers to pay Hilltown Associates $56,642.35 in management fees from partnership funds. Accordingly, we reverse that portion of paragraph 1 on page 3 of the trial court's June 24, 1986, order which denied Susman's objections to the partnership's payment of management fees to the Ashers, and remand this matter for recalculation of permissible partnership disbursements in a manner consistent with this opinion.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part; reversed in part and remanded.

Affirmed in part; reversed in part and remanded.

FREEMAN, P.J., and WHITE, J., concur.