**In re Jacqueline SMITH, Debtor.**

**Donald M. SAMSON, Trustee, Plaintiff,**

**v.**

**Lawrence R. PROKOPF and Prokopf Family Partnership, a Limited Partnership, Defendants.**

Bankruptcy No. 92–30515.
Adv. No. 94–3013.

United States Bankruptcy Court,
S.D. Illinois.

Aug. 3, 1995.

Donald M. Samson, Trustee, Belleville, IL.

Phillip H. Hamilton, Godfrey, IL, for defendants.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

The Chapter 7 trustee filed this adversary proceeding to recover property held by a limited partnership formed by debtor, Jacqueline Smith, and her brother, Lawrence Prokopf. Count I of the trustee's amended complaint seeks to avoid as a fraudulent conveyance the debtor's transfer of property to the limited partnership, known as the Prok-

opf Family Partnership.[1] Count II of the complaint, which is at issue in this proceeding, seeks to dissolve the limited partnership pursuant to Illinois law for failure to comply with partnership purposes or, alternatively, to have the debtor's interest in the partnership property reconveyed to her bankruptcy estate because of the invalidity of the partnership.

Defendants, Lawrence Prokopf and the Prokopf Family Partnership, filed a motion to dismiss Count II of the trustee's complaint. The Court subsequently construed the defendants' motion as a motion for summary judgment pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.Proc. 12(b)(6).[2] The trustee has not filed a cross-motion for summary judgment.

The undisputed facts are as follows: In July 1990, the debtor and her brother entered into a written agreement to form an Illinois limited partnership. The stated purpose of the limited partnership, which was to operate under the name "Prokopf Family Partnership," was "[t]o hold and invest family real estate," with "[t]he general character of … [its] business" being "to hold, develop and lease real estate and equipment, and conduct a general business as thereto related." Contemporaneous with entering into the limited partnership agreement, and as their initial capital contributions to the partnership, Lawrence Prokopf and the debtor each conveyed to the limited partnership his or her undivided one-half interest in certain real estate valued at $50,000, which both occupied as a residence. Lawrence Prokopf was designated as the general partner and as a limited partner with a 50% interest in the limited partnership, and the debtor was designated as a limited partner holding the remaining 50% interest.[3]

The limited partnership agreement provided that the partnership would continue for twenty-five years from its inception, unless sooner terminated by law, by the sale, disposition or abandonment of all of its property interests, or by dissolution and termination in accordance with the partnership agreement. During its existence, no limited partner could withdraw or demand the return of any part of his or her capital contribution except upon dissolution of the partnership. However, no further capital contributions were required from the partners unless all partners agreed.

The partnership agreement allowed a limited partner to sell his or her economic interest in the partnership to a third party but only after first offering the interest to the partnership for purchase. The agreement provided that if sale to a third party did transpire, the third party would not become a limited partner unless the general partner gave his consent and certain other requirements were met.

The partnership agreement further provided that the bankruptcy of a limited partner would not dissolve the limited partnership. Dissolution would take place only upon the occurrence of certain events set forth in the partnership agreement, one of which was the entry of a dissolution decree or judicial order by a court of competent jurisdiction. In the event of dissolution and final termination, the general partner was to wind up the partnership affairs, sell all assets, pay all liabilities and distribute any remaining monies to the partners.

In Count II of the trustee's complaint seeking dissolution of the limited partnership, the trustee alleges that Illinois law requires a limited partnership to be a business entity whose purpose is to conduct business

---

1. Count I is brought pursuant to 11 U.S.C. § 544(b) and Illinois' Uniform Fraudulent Conveyance Act, 740 ILCS 160/5 (1994).

2. Rule 12(b)(6), made applicable to this proceeding by Bankruptcy Rule 7012(b), provides that when, on a motion to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and dis-

posed of as provided in Rule 56. *See* Fed.R.Civ. Proc. 56.

3. Subsequently, on October 11, 1990, Lawrence Prokopf executed an amendment to the partnership agreement, adding his son, Christopher Scott Prokopf, as a limited partner and transferring to him a 20% interest in the partnership derived from the 50% interest of Lawrence Prokopf.

and that the Prokopf Family Partnership has failed to act as a limited partnership because its purpose is to hold title to the residence rather than to conduct business. The trustee further asserts that the debtor and Lawrence Prokopf have failed to treat the residence as partnership property in that they have not maintained a partnership bank account and have used personal funds to pay for taxes, insurance, and upkeep of the residence. The trustee contends that since the partnership is not conducting business nor complying with its stated partnership purposes, he is entitled, as holder of the debtor's interest in the limited partnership, to dissolution of the partnership pursuant to Illinois law. Alternatively, he argues that there is no valid partnership and that he is entitled to have the debtor's undivided one-half interest in the real estate reconveyed from the limited partnership to the bankruptcy estate or to have the debtor's conveyance of this interest to the limited partnership set aside.

■ The defendants seek summary judgment on Count II of the complaint,[4] setting forth a five-fold argument in support of their motion. The defendants contend, first, that the bankruptcy trustee of a limited partner may not seek dissolution of the partnership because the estate's interest is confined to the personal property interest which the limited partner holds in partnership property. This argument, which is jurisdictional in nature, requires the Court to determine what property interest is included in the bankruptcy estate of the debtor as limited partner.

■ A limited partnership is a "[t]ype of partnership comprised of one or more general partners who manage [the] business and who are personally liable for partnership debts, and one or more limited partners who contribute capital and share in profits but who take no part in running [the] business and incur no liability with respect to partnership obligations beyond contribution." *Black's Law Dictionary* 928 (6th ed. 1990).[5] A limited partner is granted limited liability for partnership debt in exchange for relinquishing participation in the control of the business. 805 ILCS 210/303; *see, e.g., Allen v. Amber Manor Apartments Partnership,* 95 Ill.App.3d 541, 51 Ill.Dec. 26, 31, 420 N.E.2d 440, 445 (1981).

■ A limited partner's interest in the partnership of which he or she is a member is personal property. 805 ILCS 210/701. It consists of the "partner's share of the profits and losses of . . . [the] limited partnership and the right to receive distributions of partnership assets." 805 ILCS 210/101(10). It is this economic interest which is included in the limited partner's bankruptcy estate and not any specific asset owned by the partnership itself. *See, e.g., Matter of Pentell,* 777 F.2d 1281, 1285 (7th Cir.1985); *In re Olszewski,* 124 B.R. 743, 746 (Bankr.S.D.Ohio 1991).

■ However, the rights of a limited partner consist of more than his or her right to share in partnership income and in the distribution of partnership assets. *See, e.g., In re Priestley,* 93 B.R. 253, 257–58 (Bankr. D.N.M.1988). A limited partner also has contractual rights arising from the partner-

---

4. The standard used by the Court in determining whether to grant summary judgment is firmly established. "The burden is on the movant to show 'that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law,' and '[a]ny doubt as to the existence of a genuine issue for trial is resolved against the moving party.'" *LaScola v. US Sprint Communications,* 946 F.2d 559, 563 (7th Cir.1991) (quoting *New Burnham Prairie Homes, Inc. v. Village of Burnham,* 910 F.2d 1474, 1477 (7th Cir.1990)).

5. A limited partnership is defined by Illinois' Revised Uniform Limited Partnership Act, 805 ILCS 210/100 *et seq.* (1994), as "a partnership formed by 2 or more persons under the laws of this State and having one or more general part-

ners and one or more limited partners." 805 ILCS 210/101(7). This Act and Illinois' Uniform Partnership Act, 805 ILCS 205/1 *et seq.* (1994), are deemed part of a limited partnership agreement to the same extent as though expressly referred to or incorporated in the contract between the limited and general partners. *See State Farm Mut. Auto Ins. v. Hanover Dev. Corp.,* 73 Ill.App.3d 326, 29 Ill.Dec. 299, 303, 391 N.E.2d 562, 566 (1979); *Inland Real Estate Corp. v. Christoph,* 107 Ill.App.3d 183, 63 Ill.Dec. 9, 13, 437 N.E.2d 658, 662 (1981); 3 Alan R. Bromberg & Larry E. Ribstein, *Bromberg and Ribstein on Partnerships,* § 12.05(e), at 12:69 (1994) ("[t]he agreement is said to include or incorporate the statute under which it is drawn").

ship which include "the right to have full information ... and to have the same rights as a general partner in reference to dissolution and winding up by a decree of court." *Curtis v. Johnson*, 92 Ill.App.2d 141, 234 N.E.2d 566, 572 (1968); *see In re Priestley*, 93 B.R. at 257–58; 805 ILCS 210/305; 805 ILCS 210/802; 805 ILCS 210/803. When a limited partner is a debtor in bankruptcy, these rights are legal or equitable interests of the debtor within the ambit of 11 U.S.C. § 541(a)(1) [6] and become property of the bankruptcy estate. *See, e.g., In re Antonelli*, 4 F.3d 984, 29 C.B.C.2d 935, 943 (4th Cir. 1993) ("[b]oth the economic interest in the partnerships and the right to participation in the management of the partnerships' affairs vested in the estate" of the debtor who was a general partner in several partnerships); *In re Cardinal Indus., Inc.*, 105 B.R. 834, 848–849 (Bankr.S.D.Ohio 1989); *Matter of Plunkett*, 23 B.R. 392, 393–394 (Bankr.E.D.Wis. 1982) (any rights, benefits or duties flowing from the partner's contract with the partnership constitute property of the estate).

The decisions cited by the defendants, *In re Funneman*, 155 B.R. 197 (Bankr.S.D.Ill. 1993), and *Turner v. Central Nat'l Bank of Mattoon, Ill.*, 468 F.2d 590 (7th Cir.1972), do not provide otherwise. In *Funneman*, this Court ruled that because a partnership is a separate entity which holds property in its own right, the Chapter 7 trustee of a debtor partner could not sell real estate belonging to the partnership but was limited to selling the partner's personal property interest in the partnership. *Funneman*, 155 B.R. at 200. Similarly, in *Turner*, the Seventh Circuit Court of Appeals held that the Chapter 7 trustee of a debtor partner could not recover, as a preferential transfer, monies paid to a creditor by the partnership from partnership funds. *Turner*, 468 F.2d at 591. The court, noting that the partner had no interest in specific partnership property, ruled that the trustee's interest in partnership property was limited to the individual partner's share

of partnership property, if any, remaining after payment of partnership debts. *Id.*

■ Both *Turner* and *Funneman* are distinguishable from the present case in that they were concerned with the ability of the trustee of the debtor partner to reach specific assets which belonged to the partnership. In contrast, the present case is concerned with the limited partner's right to obtain dissolution of the partnership—a right which belongs to the individual partner and not to the partnership. Neither *Turner* nor *Funneman* stands for the proposition that a debtor's rights as a partner are limited exclusively to the debtor's personal property interest in the partnership. The Court finds, accordingly, that the debtor's right, as limited partner, to seek judicial dissolution of the partnership is property of her estate over which the Court has jurisdiction and that the trustee in this case is not precluded from seeking judicial dissolution of the partnership by reason of exclusion of this right from the debtor's estate.

■ In a second but related argument, the defendants contend that because of the restrictions on transfer contained in the partnership agreement, only a partner may seek dissolution of the partnership and the trustee may not step into the shoes of the debtor partner for this purpose. The defendants refer to language in the agreement which prohibits a transferee or assignee of a limited partner's interest from becoming a limited partner without, among other things, the consent of the general partner to the substitution. The defendants argue that this restriction on the debtor's ability to substitute limited partners applies as well to prevent her bankruptcy trustee from succeeding to the debtor's right under the partnership agreement to obtain judicial dissolution.

■ As discussed above, the debtor's contractual rights under the partnership agreement—including the right to seek judicial dissolution of the partnership—are as-

---

6. Section 541(a)(1) provides, in pertinent part:
 (a) The commencement of a case under section 301 ... of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

 (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
11 U.S.C. § 541(a)(1).

sets of the estate pursuant to § 541(a)(1). The restrictions on transfer or assignment contained in the partnership agreement do not prevent the vesting of the debtor's contractual rights in the bankruptcy estate because § 541(c)(1)(A) " 'invalidates restrictions on the transfer of property of the debtor, in order that all of the interests of the debtor will become property of the estate....' " [7] *In re Baquet,* 61 B.R. 495, 498 (Bankr. D.Mont.1986) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 369 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6325). Thus, while § 541(c)(1)(A) does not invalidate the restrictions as they apply to a subsequent transfer of property from the estate to third parties, the restrictions are rendered void *vis-a-vis* the original transfer of property to the estate. *See In re Farmers Markets, Inc.,* 792 F.2d 1400, 1402 (9th Cir.1986); *In re Todd,* 118 B.R. 432, 434–35 (Bankr.D.S.C.1989); 4 *Collier on Bankruptcy,* § 541.22, at 541–115 n. 6 (15th ed. 1995).

 In this case, the right to obtain judicial dissolution vested in the debtor's estate upon her bankruptcy filing, *see* 4 *Collier on Bankruptcy, supra,* ¶ 541.02, at 541–14 to 541–15, and the trustee, as representative of her estate, *id.,* succeeded to the debtor's right to bring this cause of action by operation of law. A Chapter 7 trustee is obligated to "collect and reduce to money the property of the estate...." 11 U.S.C. § 704(1). In order to carry out this liquidation process, the trustee succeeds to all causes of action held by the debtor at the time the bankruptcy petition is filed and, as the sole representative of the estate, has the exclusive capacity to sue on behalf of the estate. *See* 11 U.S.C. §§ 323(a), 323(b); [8] *Bankruptcy Estate of B.J. McAdams, Inc. v. Ralston Purina Co.,* 154 B.R. 809, 811 (N.D.Ga.1993); *see also Matter of Geise,* 992 F.2d 651, 655 (7th Cir. 1993); *In re Lansberry,* 177 B.R. 49, 55 (Bankr.W.D.Pa.1995); 2 *Collier on Bankruptcy, supra,* ¶¶ 323.02 at 323–6, 323–8, 323–10. Thus, once the trustee was appointed in the present case, the debtor lacked standing to pursue judicial dissolution herself. *See B.J. McAdams; Lambert v. Fuller Co.,* 122 B.R. 243, 245–46 (E.D.Pa.1990); *Harris v. St. Louis Univ.,* 114 B.R. 647, 648 (E.D.Mo. 1990). Contrary to the defendants' contention, therefore, the trustee is entitled to step into the debtor's shoes to seek judicial dissolution of the partnership and, indeed, is the only party that may take such action on behalf of the debtor partner.

The defendants next assert that the limited partnership agreement between the debtor and her brother is an executory contract and that the trustee relinquished any rights he might have had under the contract to seek judicial dissolution when he failed to assume the contract in a timely manner.[9] As a result, the defendants contend, the agreement was rejected by operation of law, and the trustee is without standing to bring the present dissolution action.

A majority of courts that have considered whether a limited partnership agreement is an executory contract have answered in the affirmative. However, these courts have either accepted the executory contract characterization summarily or have dealt with limited partnership agreements under which the

---

7. Section 541(c)(1)(A) provides, in pertinent part:

(c)(1) [A]n interest of the debtor in property becomes property of the estate under subsection (a)(1) ... of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—
(A) that restricts or conditions transfer of such interest by the debtor....
11 U.S.C. § 541(c)(1)(A).

8. Section 323(a) provides that "[t]he trustee in a case under this title is the representative of the estate," 11 U.S.C. § 323(a), while § 323(b) provides that [t]he trustee ... has capacity to sue...." 11 U.S.C. § 323(b). Bankruptcy Rule 6009 further provides that "[w]ith or without court approval, the trustee ... may ... com-

mence and prosecute any action or proceeding in behalf of the estate before any tribunal." Bankr.R. 6009.

9. Section 365 of the Bankruptcy Code governs executory contracts, allowing the trustee to assume beneficial and reject detrimental contracts. *See* 11 U.S.C. § 365(a); *Matter of Midway Airlines, Inc.,* 6 F.3d 492, 494 (7th Cir.1993); *In re Fitch,* 174 B.R. 96, 100 (Bankr.S.D.Ill.1994). In a Chapter 7 case, a trustee who wishes to assume an executory contract must be expeditious. "[I]f the [Chapter 7] trustee does not assume or reject an executory contract ... of the debtor within 60 days after the order of relief, ... then such contract ... is deemed rejected." 11 U.S.C. § 365(d)(1).

limited partner has continuing financial obligations to the partnership.[10] The Court is aware of only one reported decision suggesting that a limited partnership agreement may not always be an executory contract. *See In re LaVail*, 144 B.R. 897, 898 (Bankr. D.N.M.1992) (rejecting the notion that the interest of a limited partner in a land development limited partnership must always be an executory contract).

■ Although the Bankruptcy Code does not define the term, the Court of Appeals for the Seventh Circuit has defined "executory contract" to mean "a contract under which the bankrupt and the other party both are obligated, that such obligation remains unperformed by either party, and that failure of either to complete performance would constitute a material breach excusing the other of performance." *Gouveia v. Tazbir*, 37 F.3d 295, 298–99 (7th Cir.1994); *see also In re Streets & Beard Farm Partnership*, 882 F.2d 233, 235 (7th Cir.1989) (quoting V. Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439, 460 (1974)) (an executory contract is an agreement "where 'the obligation of both the bankrupt and the other party are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other.' "). In applying this definition, a court must look to state law to determine the significance of the remaining obligations. *See Matter of C & S Grain*

*Co.*, 47 F.3d 233, 237 (7th Cir.1995); *In re Fitch*, 174 B.R. at 101.

■ While the terms of each limited partnership vary, "a limited partner's interest is essentially an investment." 3 Bromberg & Ribstein, *supra*, § 12.01(a), at 12:7 (1994); *see Kramer v. McDonald's System, Inc.*, 77 Ill.2d 323, 33 Ill.Dec. 115, 119, 396 N.E.2d 504, 508 (1979). The Seventh Circuit's definition of executory contract requires that a case-specific examination of the limited partnership agreement be made to determine whether the limited partner, after contributing capital, is purely a passive investor or whether he or she owes substantial future performance to the limited partnership.

■ Here, the debtor made an initial capital contribution to the limited partnership when she deeded her interest in the residence to the partnership. The limited partnership agreement obligates her to make no further capital contributions without her consent and the consent of all other partners. Although the debtor, as a limited partner, may not withdraw or demand the return of any portion of her capital contribution other than through dissolution of the partnership, she has no material obligations left to perform.[11] She is merely a "passive contributor[ ] of capital." 3 Bromberg & Ribstein, *supra*, § 12.01(a), at 12:5.

---

10. *See, e.g., In re LeRoux*, 167 B.R. 318, 320 (Bankr.D.Mass.1994) (no discussion of remaining obligations of limited partner); *In re Priestley*, 93 B.R. at 258–59 (limited partners had continuing obligations to pay off notes for their capital contributions, to make fixed, monthly payments for partnership costs, to continue to accept the services of the general partner, and to come to an annual decision to reinvest profits in the partnership or to demand distribution); *In re Heafitz*, 85 B.R. 274, 282–84 (Bankr.S.D.N.Y.1988) (limited partner had continuing duty to satisfy promissory notes, to refrain from taking part in the business, and to refrain from assigning his partnership interest without the requisite consent); *In re Corky Foods Corp.*, 85 B.R. 903, 904 (Bankr. S.D.Fla.1988) (no discussion of remaining obligations of limited partner); *In re Rittenhouse Carpet, Inc.*, 56 B.R. 131, 132–33 (Bankr.E.D.Pa. 1985) (decision based on assumption that limited partnership agreement is an executory contract without discussion); *In re Harms*, 10 B.R. 817, 819–21 (Bankr.D.Colo.1981) (quoting *Workman*

*v. Harrison*, 282 F.2d 693, 699 (10th Cir.1960)) (emphasis deleted) (limited partners' obligations to make substantial future payments held to be basis to find executory contract under Tenth Circuit definition that " 'neither party ha[d] completely performed and the obligations of each remain[ed] complex.' ").

11. The limited partnership agreement allows the general partner to terminate the interest of a limited partner and expel him or her for, *inter alia*, failing to meet any written commitment to the general partner. Demanding the return of one's capital contribution would fall within this category because it would violate the partnership agreement to which the limited partners are signatories. However, since the partnership agreement contains a remedy for this transgression, the Court cannot conclude that such an infraction would excuse the other partners from performing.

The defendants, however, contend that the limited partnership agreement is an executory contract because it (1) provides for an annual meeting of all general and limited partners at which the annual financial statements and the financial condition of the partnership are discussed; (2) entitles any limited partner to request and receive copies of any interim financial statements prepared for the general partner; (3) entitles any limited partner to seek judicial dissolution of the partnership; and (4) places restrictions on a limited partner's ability to sell his or her limited partnership interest without first offering the interest to the partnership for purchase.

The first three provisions cited by the defendants refer to rights of the limited partners and not to obligations which bind the limited partners. The partnership agreement places no obligation on the limited partners to attend the annual meetings. It merely allows them access to financial information which is presented at the annual meetings or more frequently through interim reports. It also permits them to obtain judicial dissolution of the partnership. Should any limited partner fail to exercise one or more of these rights, the other partners are without recourse because there has been no breach of the agreement.

The question posed by the "buy back" provision also is easily resolved. Under this provision, a limited partner who has received an offer to sell his or her partnership interest must extend a 120–day opportunity to the partnership to purchase the interest on the same terms as the offer. The language does not create a performance obligation but merely constrains the manner by which a partner may liquidate his or her holdings in the event such an occurrence transpires.

▮▮▮▮ Even if the court assumes for the purposes of argument that the "buy back" provision constitutes a performance obligation of the limited partners, it is not a material obligation, as its violation by the debtor would not excuse performance by the remaining partners under the partnership agreement. As a general rule, Illinois law requires that a contract breach be material to justify nonperformance by the other parties to the contract. *See, e.g., Sahadi v. Continental Illinois Nat'l Bank and Trust Co. of Chicago,* 706 F.2d 193, 196 (7th Cir. 1983); *Borys v. Rudd,* 207 Ill.App.3d 610, 152 Ill.Dec. 623, 628, 566 N.E.2d 310, 315 (1990), *appeal denied,* 139 Ill.2d 593, 159 Ill.Dec. 104, 575 N.E.2d 911 (1991); *Susman v. Cypress Venture,* 187 Ill.App.3d 312, 134 Ill. Dec. 901, 904, 543 N.E.2d 184, 187 (1989). A minor breach is compensable in damages but does not usually give rise to a cause of action on the entire contract nor release the non-breaching party from the duty to perform. *E.g., Circle Sec. Agency, Inc. v. Ross,* 107 Ill.App.3d 195, 63 Ill.Dec. 18, 23, 437 N.E.2d 667, 672 (1982).

▮▮▮▮ Here, the partnership agreement provides that an assignee or transferee of a limited partner's interest in the partnership does not become a substitute limited partner unless, *inter alia,* the general partner consents to the substitution. In other words, upon a sale in violation of the remaining partners' preemptive rights, the purchaser would obtain no more than the assigning partner's right to share in partnership profits and surplus. He or she would be unable to exercise any of the rights of a limited partner under the agreement. Accordingly, the principle of *delectus personae* would remain intact,[12] and the non-breaching partners would not be harmed in the sense of having to accept as a limited partner a stranger to the partnership agreement. Existence of the "buy back" provision, therefore, does not transform the limited partnership agreement into an executory contract, and the defendants' argument that the trustee lost the right to dissolve the partnership when he neglected to assume the agreement as an executory contract must fail.

▮▮▮▮ In their fourth argument, the defendants address the merits of the trustee's complaint and assert that even if the Court were to assume that the limited partnership is not conducting business as the trustee alleges, this does not constitute grounds for

---

**12.** *Delectus personae* refers to the right of a partner to exercise his or her choice and preference as to the admission of new partners. *See Black's Law Dictionary,* 428–29 (6th ed. 1990).

dissolution of the partnership under Illinois law. Section 802 of Illinois' Revised Uniform Limited Partnership Act ("RULPA"), upon which the trustee's dissolution action is based, provides:

> Judicial Dissolution. On application by or for a partner the circuit court of the county in which the registered office of the partnership is located may order dissolution of a limited partnership whenever it is not reasonably practicable *to carry on the business* in conformity with the partnership agreement.

805 ILCS 210/802 (emphasis added). Further, the RULPA provides, with certain exceptions not applicable here, that "[a] limited partnership *may carry on any business* that a partnership without limited partners may carry on . . . ," 805 ILCS 210/105 (emphasis added), and Illinois' Uniform Partnership Act ("UPA"), which applies equally to limited partnerships, defines a partnership as "an association of two or more persons *to carry on . . . a business for profit.*" 805 ILCS 205/6(1) (emphasis added). Accordingly, it is clear that a limited partnership must carry on a business, *see Urban v. Brady*, 86 Ill. App.2d 158, 230 N.E.2d 65, 67 (1967); *In re Dolton Lodge Trust No. 35188*, 22 B.R. 918, 925 (Bankr.N.D.Ill.1982), and that a partnership may be dissolved upon its failure to do so.

 Here, the trustee alleges that the partnership has failed to act in accordance with its stated purpose of investing in real estate and that the partnership, which simply holds title to the residence, is not conducting a business of real estate investment. The pertinent issue, therefore, is whether merely holding title to real estate—if, indeed, that is all the partnership is doing—constitutes carrying on a business under Illinois law. The Court, however, may not make such a determination in ruling on the defendants' summary judgment motion because its resolution depends on facts not before the Court. The Court has no evidence before it to show whether the limited partnership is simply holding title to real estate as opposed to conducting a business of real estate investment.[13] Therefore, summary judgment is inappropriate at this time, and the defendants' argument must fail.

The defendants argue finally that the language of 805 ILCS 210/802—authorizing the dissolution of a limited partnership by the circuit court of the county in which the registered office of the partnership is located—precludes this Court from exercising jurisdiction over the trustee's cause of action for dissolution of the limited partnership. The trustee responds that, rather than foreclosing a bankruptcy court's jurisdiction over a dissolution action, the language of the statute merely establishes the proper venue for such an action.

 Jurisdiction and venue are distinct legal concepts. "Jurisdiction" concerns the power of a court to decide the merits of a case, while "venue" determines where a case is to be heard. *Baltimore & Ohio R.R. Co. v. Mosele*, 67 Ill.2d 321, 10 Ill.Dec. 602, 605, 368 N.E.2d 88, 91 (1977). The venue of civil actions and proceedings generally is regulated by statute. *See* 36 Ill.L. & Prac., *Venue* § 1, at 2 (1958). These statutory venue requirements are procedural only and do not have any relation to the question of jurisdiction. *Mosele*, 10 Ill.Dec. at 605, 368 N.E.2d at 91. Rather, the venue statutes are designed to insure that the case is brought in a convenient forum—setting venue in the county of residence for the convenience of defendants or in the place where the cause of action arose for the convenience of potential witnesses. *Id.; Peile v. Skelgas, Inc.*, 242 Ill.App.3d 500, 182 Ill.Dec. 944, 955, 610 N.E.2d 813, 824 (1993), *rev'd on other grounds*, 163 Ill.2d 323, 206 Ill.Dec. 179, 645 N.E.2d 184 (1994).

Section 2–103(c) of the Illinois venue statutes provides that "[a]ny action which is made local by . . . statute must be brought in the county designated in the statute." 735 ILCS 5/2–103(c). At common law, every

---

13. The Court notes that had the trustee moved for summary judgment on this issue, supporting his motion with evidence to show that the limited partnership was not conducting business, the Court would have been in a position to dispose of this issue. As it stands, the trustee has not moved for summary judgment, and an unresolved question of fact remains as to whether or not the limited partnership is merely holding title to the real estate.

cause of action was classified for purposes of venue as either transitory or local. *Peile*, 182 Ill.Dec. at 954, 610 N.E.2d at 823. A transitory action followed the defendant and could be brought in any county where the defendant was found. *Id.* In contrast, a local action could arise in only one place as, for example, an action involving real estate. 36 Ill.L. & Prac., *Venue* § 1, at 3.

■ In this case, the trustee's action brought pursuant to section 802 of the RULPA is "an action made local by ... statute," as the statute specifies the location for bringing an action to dissolve a limited partnership as "the county in which the registered office of the limited partnership is located." 805 ILCS 210/802.[14] This provision evidences the Illinois legislature's intent to provide a convenient forum for partners seeking to dissolve a limited partnership. The statute contains no language limiting a court's jurisdiction to hear the dissolution action but, rather, makes such an action local for purposes of venue. Section 802, therefore, is a venue provision only and does not preclude this Court from exercising jurisdiction over the trustee's cause of action. *See Peile*, 182 Ill.Dec. at 955, 610 N.E.2d at 824 (holding that, under 735 ILCS 5/2–103(c), "certain actions remain as local actions and must be brought in a particular county").

While the defendants' argument relates to this Court's jurisdiction to hear the trustee's dissolution action rather than to the proper venue for bringing the action, venue is appropriate in this Court under 28 U.S.C. § 1409(c), which allows a Chapter 7 trustee who adopts a debtor's cause of action to file suit in the federal district court "for the district where the State ... court sits in which, under nonbankruptcy venue provisions, the debtor ... may have commenced [the cause of action]." 28 U.S.C. § 1409(c). In this case, the registered office of the defendant partnership is in Belleville, Illinois. Accordingly, venue for a dissolution action in state court would lie in the circuit court of St. Clair County, Illinois, which is within the federal judicial district for the Southern District of Illinois.

■ The defendants maintain, however, that even if this Court has jurisdiction to hear the trustee's dissolution action, it should abstain from doing so. Under the abstention provisions of 28 U.S.C. § 1334(c), this Court may voluntarily abstain from hearing a proceeding "arising under title 11 or arising in or related to a case under title 11" in the interests of justice or comity with state courts, *see* 28 U.S.C. § 1334(c)(1),[15] and must mandatorily abstain from hearing a proceeding that is merely "related to" a case under title 11 if an action has been commenced and can be timely adjudicated in state court, *see* 28 U.S.C. § 1334(c)(2).[16]

It makes no difference in this case whether the trustee's action for dissolution of the partnership is characterized as "arising under," "arising in," or "related to" the debtor's bankruptcy case, as abstention is not warranted under either the mandatory or discretionary abstention provisions. First, there has been no action filed in state court that would form a basis for mandatory abstention under § 1334(c)(2). Indeed, the defendants, perhaps recognizing the futility of their argu-

**14.** By contrast, the statute governing dissolution of a general partnership does not specify a situs for the cause of action. *See* 805 ILCS 205/32; *see also De Licea v. Reyes*, 87 Ill.App.3d 704, 43 Ill.Dec. 179, 180, 410 N.E.2d 179, 180 (1980) (holding that an action for accounting and dissolution of a general partnership in Illinois is transitory and personal in nature so that venue is determined by the residence of the parties).

**15.** The discretionary abstention section provides:
Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

**16.** The mandatory abstention section provides:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.
28 U.S.C. § 1334(c)(2).

ment, have not made a formal motion for abstention. Moreover, nothing suggests to this Court that it should voluntarily abstain from hearing Count II of the trustee's complaint. The parties' litigation of related facts and issues under Count I is currently proceeding in this Court, and the interests of judicial economy and timely disposition of this case favor hearing Counts I and II in tandem. Accordingly, the Court will not abstain from hearing the trustee's dissolution action set forth in Count II.