2020 IL App (1st) 191598-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

SECOND DIVISION
May 5, 2020

No. 1-19-1598

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| KEVIN JORDAN and TYRONE JORDAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Appeal from the |
| v. | ) | Circuit Court of |
| | ) | Cook County |
| GLORIA JORDAN, KEITH JORDAN, FLOYD | ) | |
| JORDAN, JR., LASALLE BANK N.A., as Successor | ) | No. 03 CH 18768 |
| Trustee to American National Bank and Trust Company | ) | |
| under Trust Agreement Dated June 18, 1980 and known as | ) | The Honorable |
| Trust Number 50145, and the Ethel Neal Jordan Trust, | ) | David B. Atkins, |
| | ) | Judge Presiding. |
| Defendants | ) | |
| | ) | |
| (Keith Jordan, Defendant-Appellant). | ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Coghlan concurred in the judgment.

**ORDER**

¶ 1   *Held:* Trial court had jurisdiction to oversee judicial sale of trust property and distribution of sale proceeds following prior appeal, and trial court's order approving distribution of proceeds from judicial sale is affirmed.

¶ 2   The defendant-appellant, Keith Jordan, appeals *pro se* from the trial court's order distributing the proceeds of a judicial sale of trust property to the trusts' beneficiaries, which were Keith,

plaintiffs Kevin Jordan and Tyrone Jordan, and defendant Floyd Jordan, Jr. For the reasons that follow, the judgment of the trial court is affirmed.

¶ 3                                 I. BACKGROUND

¶ 4       The factual background of this case is set forth in great detail in this court's order in *Jordan v. Jordan*, 2016 IL App (1st) 151936-U. We restate here only those facts necessary to resolve this appeal. This case involves the management and judicial sale of three residential rental properties held in two separate trusts. Ethel Neal Jordan managed both trusts prior to her death in 2002, and her five children—Kevin, Tyrone, Keith, Floyd Jr., and Gloria—were named as beneficiaries. This litigation arises out of disputes among Ethel's five children about the management of the two trusts following her death.

¶ 5       The trusts at issue are LaSalle Bank Land Trust No. 50145 (LaSalle Trust) and the Ethel Neal Jordan Trust under the trust agreement dated May 11, 1995 (Ethel Trust). The corpus of the LaSalle Trust consists of an apartment building at 8015-17 South Indiana Avenue in Chicago (Indiana property). The corpus of the Ethel Trust consists in pertinent part of a three-unit apartment building at 8037 South Champlain Avenue in Chicago (Champlain property) and a two-unit building at 3620 South Ellis Avenue in Chicago (Ellis property).

¶ 6       In Count I of the operative second amended complaint, plaintiffs Kevin Jordan and Tyrone Jordan sought an order for the sale of the Indiana property pursuant to the terms of the trust agreement of the LaSalle Trust. The trial court dismissed Count I with prejudice in 2008. In Counts II and III, the plaintiffs alleged that since 2002, defendants Gloria, Keith, and Floyd had operated the Indiana property, the Champlain property, and the Ellis property to the exclusion of the plaintiffs. In Count II, they sought an accounting from the defendants of all financial information as to all income, expenses, and profits concerning the Indiana property. In Count III, they sought

the same relief of an accounting concerning the Champlain and Ellis properties.

¶ 7       The defendants also filed counterclaims against the plaintiffs. In Count I of the operative second amended counterclaim, the defendants alleged that the plaintiffs breached their fiduciary duty to them in the management of the trust properties. In Count II, they sought to have the trial court impose an equitable lien on the Indiana property in favor of Floyd. In Count III, they asserted a claim of unjust enrichment.

¶ 8       In 2008, the trial court ordered that Tyrone was to be the sole and exclusive individual responsible for the management of the three properties, and that Keith and Floyd were to have nothing to do with the properties' management. In 2010, Gloria passed away. The trial court entered two orders in 2010 and one in 2012 requiring all parties to provide an accounting for the income from and expenses incurred for the three properties during the periods in which that party managed them. Also in 2012, the plaintiffs filed a motion requesting a judicial sale of the three properties and the division of the proceeds of the judicial sale among the trust beneficiaries.

¶ 9       In 2014, the trial court held a bench trial on the three counts of the defendants' second amended counterclaim and to determine whether money was due based upon the accounting it had ordered under Counts II or III of the second amended complaint. On June 26, 2015, the trial court entered its trial ruling order. The trial court found in favor of the plaintiffs and against the defendants on all three counts of the second amended counterclaim, and it also found that the plaintiffs were not entitled to any money damages arising from the defendants' accounting. As an equitable remedy based upon the parties' deadlock concerning the management of the trusts, the trial court ordered the judicial sale of the Indiana property, the Champlain property, and the Ellis property, with the proceeds of the judicial sale to be divided equally among the beneficiaries of the LaSalle Trust and the Ethel Trust. The trial court also made a finding under Illinois Supreme

Court Rule 304(a) (eff. Feb. 26, 2010) that there existed no just reason for delaying the enforcement or appeal of its order.

¶ 10 An appeal then followed, and this court affirmed the judgment of the trial court in its entirety. *Jordan*, 2016 IL App (1st) 151936-U, ¶ 118. This court's order did not specifically remand the case to the trial court for further proceedings. See *id.* ¶ 119. Following the denial of multiple petitions for rehearing in this court and the supreme court's denial of a petition for leave to appeal, this court issued its mandate to the trial court on July 10, 2017.

¶ 11 On August 31, 2017, the plaintiffs filed a motion indicating that offers had been received on the three properties at amounts either equal to or greater than the appraised value and seeking an order authorizing Tyrone to sign all necessary documents to complete the closings and transferring of the deeds. That motion indicated that the offers for the Champlain and Ellis properties were from third parties and that Tyrone himself sought to purchase the Indiana property. Keith filed a motion to strike the plaintiffs' motion, which was denied. Upon the presentment of this motion on September 11, 2017, the defendants objected and expressed interest in purchasing the properties themselves. The plaintiffs' attorney represented that if either defendant had the financial ability to purchase one or more of the properties within a reasonable time and upon terms comparable to the existing contracts for sale, the plaintiffs would not object to the defendants' doing so. Thus, the trial court entered an order giving Keith until October 16, 2017, to submit a contract of sale for any or all of the trust properties, along with an appraisal and proof of financial commitment for financing the purchases.

¶ 12 On October 23, 2017, the trial court extended the deadline to December 1, 2017, for Keith "to obtain appraisals, a mortgage commitment, and present a contract for some or all of the trust properties." That order further stated, "Defendants Keith Jordan and Floyd Jordan, together with

Plaintiff Tyrone Jordan, the current realtor of the properties, and hopefully with the assistance of their attorneys, are to inspect the properties and have the properties appraised."

¶ 13        On December 15, 2017, the trial court entered an order recognizing that, although the defendants had objected to the plaintiffs' appraisals and contracts for sale, they had shown no impropriety on the part of the plaintiffs and merely raised objections that were speculative and unpersuasive. The trial court further recognized that the defendants had failed to submit sales contracts for any of the properties that were comparable to those submitted by the plaintiffs, with Keith's pre-qualification letters being approximately $188,000 lower than the plaintiffs' existing sales contracts. The trial court therefore granted the plaintiffs leave to proceed with the sale of the three properties, including Tyrone's own purchase of the Indiana property, and it authorized Tyrone to execute all appropriate closing documents to accomplish the sales. The proceeds of each closing were to be placed in escrow with the clerk of the circuit court.

¶ 14        On March 19, 2018, the trial court issued an order directing the successor trustee of the LaSalle Trust, Chicago Title and Trust Company, to issue the deed for the sale of the Indiana property to Tyrone. In response to Keith's objection to this, the trial court's order reiterated that Keith and Floyd had been afforded the opportunity to buy the Indiana property themselves at the same terms and price offered by Tyrone, but they were unsuccessful at doing so. The court stated that the arguments that the defendants were raising in objection to Tyrone's purchase had been repeatedly ruled upon and rejected. The sale of the Indiana property occurred on May 31, 2018, and $335,500.25 was deposited into escrow. Tyrone further deposited an additional $7,995.95 into the escrow account based on a "mathematical error."

¶ 15        On May 17, 2018, the trial court entered an order specifically approving the contract for the sale of the Champlain property for $314,000, with the proceeds to be placed in escrow with the

clerk of the circuit court for later distribution. The sale occurred on June 22, 2018, and $280,143.62 was deposited into the escrow account.

¶ 16    On September 21, 2018, the trial court entered an order specifically approving sale of the Ellis property for $190,000 and authorizing Tyrone to sign all closing documents and to convey all beneficial interest in the Ellis property to the prospective purchaser. The order recognized that Keith had submitted an undated sales contract to purchase the Ellis property, but he had done so only after Tyrone had filed his motion for court approval of the sale. The trial court thus ordered that if the prospective purchaser was unable to meet his financial obligation under the contract to purchase the Ellis property within 60 days, Keith could seek to purchase the property upon submission of a proper sales contract and evidence of pre-approval or loan commitment. On October 9, 2018, the plaintiffs advised the court that the prospective purchaser of the Ellis property no longer wished to proceed with the sale. Thus, on October 24, 2018, the trial court entered an order giving Keith until November 26, 2018, to present an executed sales contract for at least $190,000 and pre-approval or loan commitment for purchase of the Ellis property. It ordered that the closing date must be on or before December 21, 2018. The trial court further ordered that if Keith failed submit a contract, Tyrone may then have the opportunity to purchase the property for the same terms.

¶ 17    On November 26, 2018, Keith provided an executed contract for the purchase of the Ellis property. On November 30, 2018, the trial court entered an order directing Tyrone to execute that contract as trustee and manager of the Ellis property. However, Keith failed to close on the property by December 21, 2018. Therefore, on January 18, 2019, the trial court entered an order stating that Keith no longer had the authority to purchase the Ellis property. It instead ordered that Tyrone was granted the authority to purchase the Ellis property for $190,000 or more and to execute all

necessary documents on behalf of the heirs of Floyd Jordan, Sr. The sale occurred on April 10, 2019, and $166,482.08 was deposited into the escrow account.

¶ 18     On March 7, 2019, Floyd filed a motion to compel Tyrone to provide an accounting relative to the three properties. The trial court granted Floyd's motion on March 18, 2019. The trial court's order stated that Tyrone had not provided an accounting of the activity regarding the properties since December 2015, and that "[t]his documentation is important and relevant to the court's consideration of the appropriate distribution of escrow proceeds to the parties." Thus, the trial court ordered Tyrone to produce records and documents to the parties and the court relating to the three properties by April 18, 2019.

¶ 19     On May 9, 2019, the plaintiffs filed a motion to distribute the funds held in escrow. The motion stated that the plaintiffs had delivered all the documents required by the order of March 19, 2019. On May 15, 2019, the trial court stated that it "has been and continues to review the binders of recently submitted requested accounting documents for the period of 2015-2019."

¶ 20     On May 23, 2019, the trial court entered an order granting the plaintiffs' motion to distribute funds. It found that Keith, Tyrone, Floyd, and Kevin each had an equal interest in the three properties, that all money received in connection with the sale of those properties was to be shared equally among the four parties, and that $156,034.95 shall be distributed to each of them. On June 4, 2019, pursuant to a motion by Tyrone, an amended distribution order was entered. It provided that Keith, Floyd Jr., and Kevin would each receive a distribution of $226,280.20 from the money held in escrow by the clerk of the circuit court, and Tyrone would receive $111,781.22.

¶ 21     On May 31, 2019, Keith filed a motion to reconsider the trial court's order entered May 23, 2019. On June 25, 2019, the trial court denied that motion and stated it was issuing a final order. On June 20, 2019, Floyd also filed a motion to "clarify" the order of June 4, 2019. That motion

sought a reduction of Tyrone's share based on the value of personal property he had already received and for his unexplained expenditures, and an increase in Floyd's share based on his care of Gloria prior to her death. On July 9, 2019, the trial court entered an order declining to further clarify the order of June 4, 2019. That order stated, "No complaint for an accounting remains in the instant lawsuit. Although the Defendants have raised questions, there is no substantive allegation of wrongdoing to prevent the distribution of the real estate sales proceeds. If such facts support a separate cause of action, the parties should evaluate the propriety of pursuing the same." On August 7, 2019, Keith filed a notice of appeal involving the order of June 4, 2019.

¶ 22                                    II. ANALYSIS

¶ 23        The only party involved in this appeal is Keith, the appellant. No other party to the trial court proceedings has filed an appearance or an appellee brief in this matter. Therefore, this court ordered that the case would be decided on the appellant's record and brief only. We now proceed to consider the merits of Keith's appeal under the principles of *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (allowing consideration of an appeal on the appellant's brief only where the record is simple and errors can be considered without additional briefing).

¶ 24        Keith's first argument on appeal is that the trial court lacked jurisdiction to take any action following the prior appeal, because this court affirmed the trial court but did not specifically remand the case back to the trial court. See *Jordan*, 2016 IL App (1st) 151936-U, ¶ 119. Keith argues that the plaintiffs' efforts to litigate further in the trial court were improper, as nothing was filed "reopening" the case, and neither he nor any other defendant was served with a new summons. He therefore argues that any orders entered by the trial court after the appeal are void.

¶ 25        We reject this argument by Keith. In the prior appeal, this court's jurisdiction was proper

only because the trial court had made a finding under Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) that there existed no just reason for delaying the enforcement or appeal of its trial ruling order. This necessarily meant that other issues remained for future consideration by the trial court, and the trial court did not lose jurisdiction over those remaining issues by the filing of the appeal. *Yugoslav-American Cultural Center, Inc. v. Parkway Bank & Trust Co.*, 327 Ill. App. 3d 143, 148 (2001).

¶ 26　　　Also, Illinois Supreme Court Rule 369(b) (eff. July 1, 1982) provides that, "[w]hen the reviewing court dismisses the appeal or affirms the judgment and the mandate is filed in the circuit court, enforcement of the judgment may be had and other proceedings may be conducted as if no appeal had been taken." As this court affirmed the judgment and the mandate was filed in the trial court on July 10, 2017, the trial court was thereafter authorized under Rule 369(b) to conduct "other proceedings," including overseeing the judicial sale and the distribution of the proceeds. No explicit remand by this court was necessary to revest the trial court with jurisdiction. *In re Marriage of Kane*, 2018 IL App (2d) 180195, ¶ 10; *POM 1250 N. Milwaukee, LLC v. F.C.S.C., Inc.*, 2014 IL App (1st) 132098, ¶ 20.

¶ 27　　　Proceeding to the merits, this appeal involves a trial court's approval of a judicial sale and of the distribution of the proceeds of that sale. This court previously affirmed the propriety of the trial court's ordering of the judicial sale of the trust properties based on the fact that the parties were deadlocked as to the properties' management. *Jordan*, 2016 IL App (1st) 151936-U, ¶¶ 72-87, 118. Trial courts have broad discretion in approving or disapproving judicial sales made at their direction, and this court will not reverse the decision of the trial court to confirm or reject a judicial sale absent an abuse of discretion. *Household Bank, FSB v. Lewis*, 229 Ill. 2d 173, 178 (2008); *Susman v. Cypress Venture*, 187 Ill. App. 3d 312, 317 (1989) (sale of partnership assets).

¶ 28    Keith raises a number of arguments that he was denied the right to participate in the sale of the three trust properties as a co-trustee and a beneficiary. He argues that Tyrone controlled the entire sale process by selecting brokers, appraisers, and buyers, and by obtaining orders that he be allowed to sign all necessary documents to effectuate the sales. Keith contends that he had maintained that he would buy any and all realty in which he had a beneficial interest, and he had produced mortgage preapprovals from legitimate lending institutions.

¶ 29    We reject Keith's argument that he was improperly excluded from the sale process. The record demonstrates that the trial court entered multiple orders giving Keith several opportunities to purchase the properties himself upon proof of a satisfactory financial commitment. However, the record further demonstrates that, despite being given these opportunities, Keith was either unwilling or unable to actually purchase any of the properties. The record also shows that the trial court gave Keith multiple opportunities to obtain his own appraisals to establish the value of the properties, but he failed to do this either. Thus, we find no error by the trial court concerning Keith's involvement in the sales process or his opportunities to purchase the properties.

¶ 30    Keith argues that Tyrone's authority to convey title to the properties and all four brothers' beneficial interests in the properties was constrained by the terms of the trust agreements and of Ethel's will. In this court's previous order, it rejected the argument that the terms of a trust agreement restricted the court's power to fashion an equitable remedy involving the sale of the trust's property. *Jordan*, 2016 IL App (1st) 151936-U, ¶ 82 (citing 805 ILCS 206/103(b)(7) (West 2014) (partnership agreement may not restrict court's power to dissolve partnership in accordance with section 801(5) of the Uniform Partnership Act (805 ILCS 206/801(5) (West 2014)))).[1] Under

---

[1] This court's prior order recognized section 801(5) of the Uniform Partnership Act (805 ILCS 206/801(5) (West 2014)) as authority for the trial court's exercise of its equitable powers to dissolve the joint venture among the parties in this case. *Jordan*, 2016 IL App (1st) 151936-U, ¶ 74.

the same principle, neither the terms of either trust agreement nor the terms of Ethel Jordan's will restricted the trial court's ability to grant Tyrone the authority to execute all necessary closing documents to accomplish the sales. This authorization was consistent with the orders first entered in 2008 that Tyrone alone was to be responsible for the management of the three properties. The contentiousness that existed among the parties and the absence of cooperation with respect to the sale of these properties is clear from the record. Thus, we find no error on the part of the trial court in ordering that Tyrone alone had the authority to execute the closing documents to accomplish the sales of the three properties. Despite Keith's arguments to the contrary, we find that the trial court's orders properly vested Tyrone with all necessary authority to convey title to the properties and all brothers' beneficial interests to the purchasers through the process of the judicial sale.[2]

¶ 31    Keith also argues that Tyrone failed to properly account for trust funds from 2008-2013 and submitted nothing from 2014. He argues that Tyrone's accounting for 2015 through April 18, 2019, was not supported by any new receipts. He argues that Tyrone "failed to properly show what came in and what went out and where the money did go," and that he also failed to account for valuable heirlooms and artifacts.

¶ 32    The trial court addressed this argument in the context of Floyd's motion to clarify the order of June 4, 2019. Floyd argued that, since 2008 when Tyrone was granted exclusive authority to manage the properties and took exclusive possession of Ethel Jordan's personal property, he had failed to provide a proper trust accounting. Floyd argued that instead of providing a "proper" accounting pursuant to the trial court's order of March 18, 2019, Tyrone merely produced

---

[2] Keith also takes issue with the way that the sellers and buyers were named in certain contracts and closing documents. We find no merit to this argument in light of our holding that the trial court's orders adequately vested Tyrone with the authority execute all closing documents to accomplish the sales and to convey title to the properties and all brothers' beneficial interests to the buyers.

"[r]eports on [p]roperties and copies of bank statements" that did not constitute a proper and complete accounting of the assets of the LaSalle Trust and the Ethel Trust. Floyd's motion cited various examples, and it requested the trial court order Tyrone to "sit for his deposition in order to explain his failure to provide a complete and accurate accounting."

¶ 33    When the trial court initially ordered Tyrone to provide an updated accounting on March 18, 2019, it stated that Tyrone had not provided an accounting of the activity regarding the three properties since December 2015. In ordering Tyrone to provide an updated accounting by April 18, 2019, the trial court stated that "[t]his documentation is important and relevant to the court's consideration of the appropriate distribution of escrow proceeds to the parties." The record then reflects that on April 16, 2019, Tyrone's attorneys filed a document in excess of 300 pages titled "Report on Properties with Checking Account Ledgers for 2015-2019." The trial court's order of May 15, 2019, indicates that the trial court had been and was continuing to review "the binders of recently submitted requested accounting documents for the period of 2015-2019."

¶ 34    In its order of July 19, 2019, denying Floyd's motion to clarify, the trial court noted that no complaint seeking an accounting remained pending in the lawsuit. Its order further stated, "Although the Defendants have raised questions, there is no substantive allegation of wrongdoing to prevent the distribution of the real estate sales proceeds. If such facts support a separate cause of action, the parties should evaluate the propriety of pursuing the same."

¶ 35    We find no error on the part of the trial court with respect to the details of the accounting it required of Tyrone prior to ordering disbursement of the escrowed funds. A trial court has broad discretion in determining whether to order an accounting, and in making this determination it will consider the particular circumstances of each case. *Netisingha v. End of the Line, Inc.*, 107 Ill. App. 3d 275, 278 (1982); see also *Newton v. Aitken*, 260 Ill. App. 3d 717, 722 (1994). Here, the

trial court found that receiving an updated accounting from Tyrone for the period of December 2015 to April 2019 was "important and relevant" to its consideration of the appropriate distribution of the escrow proceeds. The record indicates that Tyrone provided these materials and that the trial court considered them in entering its distribution order. Beyond this, the trial court correctly recognized that there was no complaint or counterclaim pending that sought an accounting from Tyrone or that made a "substantive allegation of wrongdoing to prevent the distribution of the real estate proceeds." We thus reject Keith's argument that the trial court relied on an insufficient accounting by Tyrone in ordering the distribution of the escrowed funds.

¶ 36     On a similar basis, we reject any argument by Keith that Tyrone committed acts of misconduct during the sale process that should have prevented the trial court's distribution of the escrowed funds. Most of Keith's allegations of misconduct are nonspecific, such as that Tyrone "was allowed to act in secrecy" and to "utilize trust funds without authority or accountability." As recognized by the trial court, although the defendants had "raised questions" about Tyrone's misconduct in motions or briefs, there was no actual complaint or counterclaim pending against Tyrone that made any substantive allegation of wrongdoing against him that would have prevented the distribution of the real estate proceeds. The trial court was under no obligation to consider arguments concerning Tyrone's conduct that were not before it on the pleadings.

¶ 37     Keith argues that the trial court denied him due process by failing to afford him a hearing prior to the entry of the order of June 4, 2019. However, Keith's brief does not direct this court's attention to any page in the record demonstrating that he actually requested the trial court to conduct a hearing prior to entering its distribution order of June 4, 2019, or that the trial court denied such a request. See *Cabrera v. First National Bank of Wheaton*, 324 Ill. App. 3d 85, 103 (2001) (party's failure to request a hearing results in waiver of its right to hearing). For this reason,

we find that Keith has forfeited this argument. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (parties must cite the pages of the record relied upon in support of their arguments); *Engle v. Foley & Lardner, LLP*, 393 Ill. App. 3d 838, 854 (2009) (failure to provide citations to the record results in forfeiture of arguments lacking such citation). It is not the responsibility of this court to scour the record searching for a request for a hearing and the denial of that request. See *Travaglini v. Ingalls Health System*, 396 Ill. App. 3d 387, 405 (2009).

¶ 38    Finally, Keith argues that this court should void its prior order affirming the trial court in the earlier appeal because certain trial exhibits were missing from the record on appeal. Keith contends that Illinois Supreme Court Rule 329 (eff. Jan. 1, 2006) was violated because a supplemental record in that appeal "was prepared on an unstipulated document." There are a number of reasons why this court would not revisit its earlier order, but one of these reasons is that we lack jurisdiction to do so because such relief is outside the scope of the notice of appeal. The notice of appeal that brings this matter before this court stated only that Keith was appealing the judgment or order entered on June 4, 2019, and the relief he sought from this court was "to reverse the findings of the Circuit Court and remand for such other proceedings as may be necessary." A notice of appeal must "specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." Ill. S. Ct. R. 303(b)(2) (eff. July 1, 2017). " '[A] notice of appeal confers jurisdiction on a court of review to consider only the judgments or part thereof specified in the notice of appeal.' " *Affiliated Health Group, Ltd. v. Devon Bank*, 2016 IL App (1st) 152685, ¶ 27 (quoting *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 433 (1979)). The scope of appellate jurisdiction is fixed by the notice of appeal and by later proper amendment thereto. *Id.* As it is not within our jurisdiction, we will not consider any argument that this court's prior order was void.

¶ 39                                    III. CONCLUSION

¶ 40    For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 41    Affirmed.